DAVID COWEE, Appellant, *v.* WILLIAM W. CORNELL et al., Executors, etc., Respondents.

*It seems,* that the presumption of delivery by the maker, arising from the possession and production of a promissory note by the payee, is much weakened, if not destroyed, in case where the maker is dead and the payee is one of his executors, and such possession is not shown to antedate the possession of all the maker's papers and effects by the payee, and where the note appears to be all in the handwriting of the decedent, and to have been taken with a stub attached, also in his handwriting, from a blank book belonging to him, and where installments of interest falling due in the maker's lifetime were not paid, and although years elapsed after they so became due before his death, there is no proof of demand upon or of recognition of liability by the payee.

Upon the stub to such a note was written by the maker the following, "to make the amount the same as Chas. W. Cornell." The payee of the note was a grandson of the maker, as was also said Charles W., to whom the maker had advanced $20,000, It appeared that some six years prior to the death of the maker, who was a man of large means, the payee, at the request of the maker, abandoned his profession, and from that time, to that of the death of the maker, attended to the business affairs of, and he and his family were supported by the latter, who also expressed his intention to make some compensation for those ser-

vices. A short time before the death of the maker he consulted his counsel as to making this compensation by will, but was advised to do it while alive, to which he assented. The payee had had property given him by the maker, of the value of $32,000, before the making of the note, and claimed $30,000 more in bonds as having been given to him. *Held,* that the memorandum upon the stub was not, under the circumstances, conclusive evidence that the note was a gift, and without consideration, but the question was one of fact; and that the evidence was sufficient to sustain a finding that the note was delivered not as a gift, but for a valuable consideration.

The note was transferred to plaintiff after the death of the payee, plaintiff giving therefor his own note for $19,000, payable in one year from date, which note was still in the possession of the payee. *Held,* that plaintiff was not a *bona fide* purchaser for value, and that the consideration of the note was open for inquiry; but that where the parties dealt upon equal terms mere inadequacy of consideration was not a matter with which the court will interfere.

The fact that one of the parties to a contract is old, and is the grandfather and the employer of the other, does not raise a conclusive presumption of such an inequality between them as imposes upon the latter the burden of proving affirmatively that no deception was practiced, no undue influence used, and that all was fair, open, voluntary and well understood. While these relations are, as matter of fact, consistent with weakness and confidence on the one side, and strength and undue influence on the other, this is not necessarily presumable from the relations themselves, and it must be shown in order to impose this burden.

(Argued September 21, 1878; decided November 12, 1878.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, reversing a judgment entered upon the report of a referee.

Plaintiff made a claim against the estate of Latham Cornell, of whose will defendants were the executors, for interest upon a promissory note executed by the deceased. This claim was rejected, and was referred by stipulation.

The facts, as stated by the referee are in substance as follows:

Latham Cornell, the deceased, was the grandfather of Latham C. Strong. He was possessed of large property consisting of real estate, and of personal property invested in stocks, bonds and other securities. He died in 1876, at the age of ninety-five. For four years prior to his death he was

partially blind.     From July, 1871, until the time of his death, his grandson at his request attended to his affairs, writing his letters, looking after his banking business and his rents, making out his bills, cutting off his coupons, reading to him, and on occasions going away from home to transact other business.     In July, 1871, Cornell gave to Strong a deed of two adjoining houses in the city of Troy, valued at about $32,000, in one of which houses the grandfather lived until the time of his death.     The grandson moved into the adjoining house in the spring of 1872, and resided there until after his grandfather's death.     During the time that the two thus lived in adjoining residences, they were in daily conference upon business matters of the old gentleman, in the house occupied by the grandson.     The grandson with his family consisting of five persons, during all this time lived at the sole expense of the grandfather, and claims to have received, in addition to the note in suit, as gifts from his grandfather, $30,000 in government bonds and the assignment of a mortgage for about $1,700.     At what particular time it is claimed these gifts were made is not in evidence.     Mr. Cornell had made his will in 1871, providing a legacy of $15,000 for Mr. Strong.     In the fall of 1872, Mr. Strong expressed a desire to go into business for himself and to be independent of his grandfather, and actually was in negotiation with different persons in Troy and New York with a view of forming business associations.     Mr. Cornell became uneasy at the prospect of losing the services of his grandson and caused him to be written for to come home.     Mr. Strong came back to Troy, and his grandfather said to him then, as he had previously said, that he wanted him to give up his ideas of leaving and to devote his whole time to the business of his grandfather. Mr. Cornell further said that he had no one else to look after his business, and frequently said that there was money enough for all of them.     Mr. Strong immediately abandoned his business projects and devoted his whole time and attention to his grandfather's business, until the death of the latter.     After this Mr. Cornell sent for his legal advisers and proposed to

alter his will so as to make provision to compensate his grandson for having devoted himself to his business. What provision was intended is not disclosed by the evidence. The lawyers advised that his will be left unaltered, and that he take some other way of compensating his grandson. Mr. Cornell gave to Mr. Strong the note in question. It is as follows :

"$20,000.                    TROY, *April* 1, 1873.

"Five years after date I promise to pay Latham L. C. Strong, or order, $20,000 for value received, with interest yearly.                    L. CORNELL."

The note was on a printed form, the name of the payee being printed "Latham Cornell." The note was filled up in the handwriting of the maker, but in striking out with his pen the name of the payee he left the word "Latham" and afterwards interlined the full name, "L. C. Strong." Annexed to the note was a stub with some printed forms, on which Mr. Cornell wrote : "Troy, April 1st, 1873. L. C. Strong, $20,000 at five years, to make the amount the same as Chas. W. Cornell." The stub was on the note when it was delivered to the payee, but was torn off by him before it was transferred to the plaintiff ; and there is no evidence that the plaintiff ever knew of the existence of the stub. The stub and note were taken from a blank book which belonged to decedent. No payment of interest was made upon the note during the lifetime of the maker. The referee found that the note was given for a valuable consideration. Mr. Strong sold the note to the plaintiff for $19,000, taking his note, payable in one year after date. What that date was has not been disclosed ; Mr. Strong testified at the trial that he still held the note. Mr. Strong was one of the executors.

Further facts are stated in the opinion.

*Irving Browne,* for appellant. The stub was no part of the note. (2 Pars. on Bills, 546.) It was proper for Mr. Cornell to attach such value to the services of Strong as he pleased and to make a note for such amount. (*Worth* v.

*Case*, 42 N. Y., 362; *Earl* v. *Peck*, 64 id., 596.) The note having been executed for value and it appearing to have been reasonable in amount the doctrine of constructive fraud will not apply and plaintiff was not bound to show the fairness of its execution and delivery, or that it had not been paid. (1 Pars. on Bills, 175; *Burnham* v. *Allen*, 1 Gray, 500; *Cheslyn* v. *Dalby*, 2 Y. & C., 195, 196.) In cases of natural relationship the law does not apply the doctrine of constructive fraud and impose on the claimant the burden of showing the fairness and good faith of the transaction. (*Jenkins* v. *Pye*, 12 Pet., 253; *Hunter* v. *Atkins*, 2 M. & K., 113; *Howe* v. *Howe*, 99 Mass., 88; *Sanfley* v. *Jackson*, 16 Tex., 584; *Beauland* v. *Bradley*, 2 S. & G., 339.)

*John Thompson*, for respondents. Plaintiff was bound to show that the note in suit was not procured by any undue influence the donee might have exercised by reason of his fiduciary relations. (*Houghton* v. *Houghton*, 11 L. & Eq., 138; *Cooke* v. *Lamotte*, 2 L. J. (N. S.) Ch., 371; *Gibson* v. *Jayes*, 6 Ves., 266; *Huguenin* v. *Basely*, 14 id., 273; 9 J. R., 253; *Nesbit* v. *Lockman*, 34 N. Y., 167; *Sears* v. *Shafer*, 2 Seld., 268; *Brock* v. *Barnes*, 40 Barb., 521; *Du Bois* v. *Corsfell*, 4 id., 393.) The note in suit was not the subject of a valid gift by the maker. (1 Story's Eq. Jur., § 256; *Harris* v. *Clark*, 3 N. Y., 112; *Pearson* v. *Pearson*, 7 J. R., 26; *Fink* v. *Cox*, 18 id., 145; 23 N. Y., 74, 78; 28 Barb., 130, 137.) As the law prevented the deceased from executing any paper in favor of his confidential agent, and the latter from receiving it, the note never had any existence and could not be made valid by assignment. (14 Ves., 289; Bateman on Comc'l Law, 19, 20, §§ 5, 6; 1 Story Eq. Jur., §§ 218, 308, 310, 311, 315, 328; 65 Barb., 346; 56 N. Y., 462.)

HAND, J. The counsel for respondents suggested at the close of his argument before us that there was no evidence of a delivery of the note to Strong the payee, and the find-

ing of delivery by the referee was entirely unsupported. He does not however make this a point in his printed brief, and did not present it strenuously or with any emphasis in his oral remarks.

It is true that the evidence in this respect was not very satisfactory. Ordinarily the possession and production of the note by the payee will raise a presumption of delivery to him. But this presumption must be very much weakened when the possession is shown not to precede .the possession of all the maker's papers and effects by the payee as executor ; when the note appears to have been all in the handwriting of the maker and to have been taken with a stub attached also in his handwriting from a blank book belonging to him, and when installments of interest falling due in the maker's lifetime were not paid and although years elapsed after they so became due before his death there is no proof of any demand of them by the payee or recognition of liability by the deceased. I am not prepared to say however that these circumstances absolutely destroy the presumption from possession and production of the instrument. While some evidence on the part of the plaintiff, showing that the note had been delivered to Strong in his grandfather's lifetime, or at least negativing the idea that Strong found it in the bank book or among the papers of the deceased when he took possession of them as executor, could probably have been easily produced if consistent with the fact, yet we cannot hold its absence conclusive against the plaintiff upon this point, upon the record as it stands. No motion for judgment or to dismiss was made on this ground by the respondents although the trial was in other respects treated by the counsel on both sides as one before a referee appointed in the ordinary way to hear and determine and direct judgment as in an action, and we cannot say but that if the plaintiff had been notified of such an objection, the evidence would have been supplied. The finding of the delivery by the referee was not even excepted to, although there were exceptions to the finding of consideration. Under these circumstances we

must, I think, assume an acquiescence in the truth of the finding by the respondents for reasons known to them and which if disclosed would probably be entirely satisfactory.

The majority of the General Term put their reversal of the judgment upon the ground that it conclusively appeared from the stub attached that the note was intended as a gift and was without consideration. In this I am unable to concur.

The referee's finding that the note was delivered not as a gift but for a valuable consideration has some evidence to support it, in the proof of the services rendered by Strong to the deceased and his abandonment of a profession at the request of the deceased, in the intention expressed by the latter to make some compensation for those services, and the conversation had with his counsel not very long before the date of this note, in which he was dissuaded from making this compensation by will and advised to do it while alive, to which he assented. What appears upon the stub is not in my opinion conclusive against this result.

There is perhaps difficulty in giving any entirely satisfactory construction to this memorandum made by the deceased, but the interpretation of the General Term seems to my mind inconsistent with the known facts of the case. Strong certainly had had and the deceased knew that he had had property of the value of $32,000 given him before the date of this note, and perhaps $30,000 more in bonds. The $20,000 note could not have been therefore as the General Term supposes a gift to make him equal in gifts with his cousin Charles to whom only $20,000 had been given in all.

But not only do the circumstances show that the memorandum could not mean that this gift of the $20,000 to Strong would make him equal in gifts to Charles, but the memorandum itself does not say so. Its language is "to make the amount the same as Chas. W. Cornell." While, as has already been said, there is probably insuperable difficulty in discovering precisely all that the deceased meant by this

expression, its intrinsic sense is merely that the amount of this note $20,000 is so fixed to make it the same as an amount possessed in some way by Charles and this is consistent with both amounts being gifts, or the one being fixed upon in the testator's mind as a fair compensation for Strong's services and at the same time equal to an amount he had given or intended to give to Charles. On the whole I think this memorandum was a piece of evidence to be submitted with the other evidence to be considered by the referee on the question of fact. His decision upon all this evidence cannot be disturbed by this court.

The same may be said of the proof of large gifts to Strong either all before, or some before and some after the date of the note.

The reversal by the General Term is not stated to be upon the facts, and on the argument it was conceded by the counsel for the respondents to be upon the law merely. It may be that a finding upon all the evidence that the note was without consideration and a gift would not be disturbed and would be held by us as not unauthorized by the evidence. On the other hand we cannot accede to the proposition that a finding to the contrary such as has been made by the referee here must by reason of the contents of this stub or other testimony be reversed as erroneous in law.

It follows, that, except as bearing upon undue influence and the relations of parties hereafter considered, the inadequacy of the services or the extravagance of the compensation are not material. That was a matter purely of agreement between Strong and the deceased and with which the court will not interfere under ordinary circumstances. (*Earl* v. *Peck*, 64 N. Y., 597; *Worth* v. *Case*, 42 id., 362; *Johnson* v. *Titus*, 2 Hill, 606.) Although the consideration of a promissory note is always open to investigation between the original parties (and we agree with the court below that the plaintiff here has no better position than Strong himself), yet as pointed out by the Chief judge in *Earl* v. *Peck* (*supra*), mere inadequacy in value of the thing bought or paid for is

never intended by the legal expression, want or failure of consideration. This only covers either total worthlessness to all parties or subsequent destruction partial or complete.

Assuming then, as I think we must, that there was no error as matter of law in the finding of the referee that this note was given for a valuable consideration, and that the adequacy of that consideration is something with which we have no concern if the parties dealt on equal terms, the only point remaining to consider is the relations existing between the deceased and Strong at the date of the note.

It is insisted strenuously by the learned counsel for the respondents that these were such as to call for the application of the doctrine of constructive fraud, and threw upon the plaintiff the burden of proving not only that the deceased fully understood the act, but that he was not induced to it by any undue influence of Strong, and that the latter took no unfair advantage of his superior influence or knowledge.

The court below were hardly correct in the suggestion that the plaintiff conceded this burden to be upon himself, and for that reason, instead of resting upon the statement of consideration in the note, gave evidence in opening his case of an actual consideration ; for this may have been done to show in the first instance that the note was not a gift and hence void under the law applicable to gifts. Indeed it appears from the findings and refusals to find, and the opinion of the referee, that such was not the theory upon which the action was tried or decided.

We return then to the question whether this case was one of constructive fraud. It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not presumed but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from

overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled. (Hunt, J. *Nesbit* v. *Lockman*, 34 N. Y., 167; Story's Eq. Jur., § 311; *Sears* v. *Shafer*, 2 Seld., 268; *Huguenin* v. *Basely*, 13 Ves., 105; S. C., 14 id., 273; S. C., 15 id., 180; *Wright* v. *Proud*, 13 id., 138; *Harris* v. *Tremenheere*, 15 id., 40; *Edwards* v. *Myrick*, 2 Hare, 60; *Hunter* v. *Atkins*, 3 My. & K., 113.) And this is I think the extent to which the well considered cases go, and is the scope of " constructive fraud."

The principle referred to it must be remembered is distinct from that absolutely forbidding a purchase by a trustee or agent for his own benefit of the subject of a trust, and charging it when so purchased with the trust. That amounts to an incapacity in the fiduciary to purchase of himself. He cannot act for himself at all however fairly or innocently in any dealing as to which he has duties as trustee or agent. The reason of this rule is subjective. It removes from the trustee, with the power, all temptation to commit any breach of trust for his own benefit. But the principle with which we are now concerned does not absolutely forbid the dealing, but it presumes it unfair and fraudulent unless the contrary is affirmatively shown.

This doctrine, as has been said, is well settled but there is often great difficulty in applying it to particular cases. .

The law presumes in the case of guardian and ward, trustee and *cestui que trust*, attorney and client, and perhaps physician and patient, from the relation of the parties itself that their situation is unequal and of the character I have defined ; and that relation appearing itself throws the burden upon the trustee, guardian or attorney of showing the fairness of his dealings.

But while the doctrine is without doubt to be extended to many other relations of trust, confidence or inequality, the trust and confidence, or the superiority on one side and weakness on the other must be proved in each of these cases ; the law does not presume them from the fact for instance that one party is a grandfather and old and the other a grandson and young, or that one is an employer and the other an *employé*. The question as to parties so situated is a question of fact dependent upon the circumstances in each case. There is no presumption of inequality either way from these relations merely.

In the present case it cannot be said that the fact that the deceased employed Strong as his clerk to read and answer his letters and cut off his coupons, and make out his bills, or as his bailiff to collect his rents, or that at this time he was old and of defective vision, or that Strong lived near him and was his grandson, taken separately or together raise a conclusive presumption of law that their situation was unequal, and that dealings between them as to compensation for these services were between a stronger and a weaker party, a fiduciary *in hac re* and the party reposing confidence. These relations as a matter of fact may have led to or been consistent with controlling influence on the part of the grandson or childish weakness and confidence on the part of the grandfather, but this was to be shown and is not necessarily derivable or presumable from the relations themselves as in the case of trustee, attorney or guardian.

From these relations and the large gifts shown from the deceased to Strong and from the extravagant amount of the compensation in the note, it is very possible the referee might have found as a fact the existence of weakness on the one side, or undue strength on the other, which rendered applicable the doctrine of constructive fraud and threw upon the plaintiff the burden of disproving such fraud. These circumstances may have well been of a character, if not sufficient to shift the presumption, at least to authorize a setting aside of a contract without any decisive proof of fraud but

upon the slightest proof that advantage was taken of the relation, or of the use of " any arts or stratagems or any undue means or the least speck of imposition." (*Whelan* v. *Whelan*, 3 Cow., 538; Ld. ELDON L. C.; *Harris* v. *Tremenheere*, 15 Ves., 40; Ld. BROUGHAM, *Hunter* v. *Atkins*, 3 My. & K., 135.)

But the referee not only has not found as fact any inequality in the situation of the deceased and Strong but refused to find as matter of law its existence and there is really no evidence whatever of any arts or stratagems or " speck of imposition " on the part of Strong as to this note.

We are not permitted to supply these findings even if we thought them proper for the referee to make, nor can we sustain a reversal of the original judgment upon facts not found and not necessarily inferable from uncontradicted evidence in the case, the General Term not having in any way interfered with the findings of the referee.

On the whole therefore we reach the conclusion that there was no good reason for disturbing the judgment of the referee. This large claim upon the estate of the deceased is not so clearly justified and explained in the evidence as we could have wished, and the circumstances are such as to compel this court to look upon the case, if not with sus· picion, certainly with anxiety, yet after careful examination we can find no material error in the original decision.

The order granting a new trial must be reversed, and judgment for plaintiff affirmed, with costs.

All concur, except MILLER and EARL, JJ., absent.

Judgment accordingly.