## VALENTINE *v.* RICHARDT.

*(Supreme Court, General Term, Second Department. May 11, 1891.)*

CONSTRUCTIVE TRUSTS—PURCHASE MONEY PROCURED BY FRAUD.

> In an action to impress a trust on certain real-estate alleged to have been purchased by defendant's husband with money obtained by fraud and undue influence from plaintiff's deceased mother, and conveyed to defendant for a nominal consideration, it appeared that defendant's husband was the physician of plaintiff's mother, that an illicit relationship existed between them, and that she was completely under his control until her death. During this time the physician bought the real estate in question for $13,000. After the death of plaintiff's mother it was found that certain bonds owned by her, worth about $13,000, had disappeared. *Held,* that a trust would be decreed in favor of plaintiff.

Appeal from special term, Kings county.

Action by Ludlow W. Valentine, an infant, by George W. Bergen, his guardian *ad litem,* against Matilda Richardt. The complaint was dismissed, and plaintiff appeals. For former reports, see 12 N. Y. Supp. 196, 13 N. Y. Supp. 417.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Connell, Secor & Page,* (*Horace Secor, Jr.,* of counsel,) for appellant. *William C. Beecher,* for respondent.

DYKMAN, J. It is the object of this action to impress a trust upon certain real estate conveyed to the defendant for a nominal consideration by her husband, Dr. Herman T. Richardt. It is charged in the complaint and the action is prosecuted upon the theory that the husband of the defendant purchased the premises in question and paid for the same with money which he obtained by fraud and undue influence from Catharine A. Valentine, the mother of the plaintiff. A trial has been had before a judge without a jury, which resulted in a dismissal of the complaint, and the plaintiff has appealed from the judgment. In the examination of the case, the testimony introduced is to be taken as true, and is to be viewed in the light most advantageous to the plaintiff, and he is also entitled to the most favorable inferences deducible from the facts and circumstances disclosed. If such inferences are not certain, or if different minds might reach different conclusions upon them, then the question is one of fact to be determined by the court or jury. *Weil* v. *Dry-Dock, etc., Co.,* 119 N. Y. 147, 23 N. E. Rep. 487. And if the evidence, examined in the light most favorable to the plaintiff, would justify and sustain a verdict of a jury in his favor, then a nonsuit is erroneous. *Thompson* v. *Lumley,* 50 How. Pr. 105, affirmed, 64 N. Y. 631. The husband of the defendant became the physician of Mrs. Valentine and her family, and after that he was with her alone in her bedroom daily for hours at a time with the door locked. From that time she was a changed woman. Before that

she was pleasant and sociable with her mother and her family, and after that she secluded herself from them. She was a church member and attended upon religious services, and after that time she ceased to do so, and refused even to see her clergyman. The doctor said he was a mind-reader, and she was a weak Eve. She told him she loved him in her mother's presence, and that he loved her, when at the same time he was a married man with three children. The doors of the house were bolted, and no one was permitted to enter, and the family went in and out at the basement. In the latter part of 1883 a lawyer called by appointment with Richardt to obtain the signature of Mrs. Valentine to a legal paper, and a girl came to the basement door and saw him, and then opened the front door after drawing the bolts. Richardt came down, and read the paper, and then went out, and came in with Mrs. Valentine, who entered the room with a down-cast look, signed the paper, and retired, without having raised her eyes or uttered a single word. These facts and circumstances manifest the illicit relations of Richardt and Mrs. Valentine, and his complete dominion over her. All this transpired in 1882 and 1883, and in the forepart of the latter year she had at least $10,000 in bonds, and at the time of her death, in January, 1888, they had disappeared, and his supremacy over her was complete during all of that time. In September, 1885, Richardt purchased real estate and paid in money $13,000, which was about the sum for which the $10,000 of bonds of Mrs. Valentine would have sold in the market at that time. When Richardt took possession of the woman and her house, she had $10,000, and when she died they were not found, and he had invested about that amount in real estate. The motives which actuated the man were plainly avaricious and vile, and it is easily inferred from his whole course that he would pursue his design without restraint. His disposition to appropriate these bonds corresponded with his opportunity, and his investment shows that he received money about that time from some unexplained source. When he went into the house, so to speak, the bonds were there, and when he came out they were not there, and he was the only person who could control them, except their owner, and she had surrendered all to him. If we pause here and ask what impression these facts make upon the mind of a reasonable person, we think the answer must be unfavorable to the defendant, and that the conviction would be forced upon the common mind that the grantor of the defendant obtained possession of the bonds of Mrs. Valentine wrongfully, and invested the proceeds in the premises in question. Evidence which satisfies the mind is sufficient to sustain a judgment. The case of *Ferry Co.* v. *Moore*, 6 N. E. Rep. 293, is similar to this in many respects, and the remarks of Judge EARL, who wrote the opinion of the court of appeals in that case, are pertinent here. He says: "This evidence, so far as it tends to show a misappropriation by Moore of plaintiff's money, is mainly circumstantial. Some of the circumstances are not very strong, and, standing alone, would be quite inconclusive and insufficient as the basis for any judgment. But they all point in one direction, and combined they furnish great probative force. They do not exclude every hypothesis but that of Moore's wrong-doing, but they all harmonize with that of guilt. His innocence may be possible. But courts, in weighing evidence and reaching conclusions, do not deal with possibilities, but with probabilities. * * * No more certainty in proof should be required than is ordinarily practicable." The facts and circumstances disclosed in this case are inconsistent with the innocence of Richardt, and they are all consistent and harmonious upon the theory of his guilt, and render it highly probable that he took the bonds in question, and appropriated their proceeds to the purchase of the property in question. Moreover, this is a case where the doctrine of constructive fraud may be applied with augmented force. The relations between Richardt and Mrs. Valentine, his overmastering influence, and her weakness render it probable that unfair advantage had been taken of her, and his deal-

ings with her are presumed to be fraudulent and void. *Cowee* v. *Cornell,* 75 N. Y. 100. He was her physician, and more, and courts of equity are always ready to interpose their benign jurisdiction to prevent and correct wrongs and frauds prepetrated by persons sustaining such confidential relations as physician and patient. So we have the case with every inference from the evidence, actual and circumstantial, drawn in favor of the plaintiff, and every presumption against the defendant, and, while more satifactory evidence is desirable, we cannot say there is none. The facts and circumstances impress upon us the belief that the premises in question were purchased with the proceeds of the bonds fraudulently obtained by Richardt, and, as the defendant is his wife and voluntary grantee, she occupies no better position than he would if the transfer had not been made. The judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.