(22 Misc. Rep. 577.)

FERRIS et al. v. FERRIS.

(Supreme Court, Special Term, Kings County. February 16, 1898.)

RELEASE—VALIDITY.

Defendant and his mother were executors of his father's will, by which his mother took a life interest in the estate. Defendant collected the income for her as long as she lived. The amount collected yearly was $4,800, of which he only paid her about $1,800. At different times she executed three releases to him on account of any indebtedness by him growing out of such relation, one of which was given when defendant was sick, and not expected to recover. Defendant and his family lived with his mother in her house, and were on affectionate terms. The mother was very old, but intelligent, and betrayed no mental failing. *Held*, that the evidence was insufficient to show that the releases were obtained through fraud or undue influence.

Action by William Ferris and Mary A. Byrne, administrators of the estate of Mary A. Ferris, deceased, against Eugene Ferris, Jr., individually and as executor of the will of Eugene Ferris, deceased, for an accounting.

This is an action by the administrators of Mary A. Ferris, deceased, against her son, Eugene Ferris, Jr., for an accounting. The said Mary A. Ferris died intestate in January, 1897. Her husband, Eugene Ferris, died in April, 1887. They resided in Brooklyn. Five children, two of them sons (the defendant being one of them), survived the said parents. · A son of a deceased son also survived them. The daughters were all married. One lived in Washington, D. C., one in Atlantic City, N. J., and one in Brooklyn. The sons were both married, and lived in Brooklyn. The defendant was 31 years old when the father died. He was in business with his father as partner. He had always lived with his parents, and continued to do so after his marriage, and when his father died he and his wife and children and his mother continued as one family in the same house, which was owned by the father. The defendant has eight children. The father also owned a summer residence, a bond and mortgage for $3,000, and a lot and building in New York City worth about $100,000, in the store of which he and the defendant carried on their said business. The value of the said other real estate is not given. By his will the father left all of his estate to his widow for life. To the defendant he left the said business, and the use of the said store, for which he was required to pay a rent of $2,400 a year to the widow. Upon the death of the widow the entire estate was given to the defendant, except a legacy of $10,000 to each of the said daughters, of $5,000 to the son William, of $5,000 to the said grandson, and of $1,000 to a niece. The defendant was thus given more than half of the estate. The widow and the defendant were named executors, and upon her death the settlement of the estate was intrusted to him. The collection of the income during the life estate was not intrusted to the executors by the will. The widow intrusted such collection and the management of the estate to the defendant. He collected about $200 a month of income, besides the rent for the said store due from him, making him chargeable with about $4,800 a year during the 10 years of the life estate. Of this he gave the widow about $1,800 a year. He also occupied the said two residences with her without paying anything therefor. She executed three general releases to him on account of any obligation or indebtedness by him to her growing out of such relation, viz., one on May 6, 1891, one on October 7, 1893, which was confirmed on December 7, 1893, and one on January 13, 1896, and they are pleaded as defenses. They are in terms for sums stated, and love and affection. The defendant was very low in sickness, and not expected to recover, when the second was executed, and it recites that fact. They were prepared by the defendant's attorney, and he had each executed. The mother was on affectionate terms with the defendant and his wife and children, and the household was happy and harmonious. The great preference given to the defendant by the father's will caused some coldness towards him by the other children, and with the exception of the one

daughter that lived in Brooklyn, they seldom saw their mother. They all had free access to her. She was affectionate to all her children, and made regular presents of money to her daughters, and also made a gift causa mortis to one of them of $500 when ill a year before she died. She was 86 years old when she died. She was of a somewhat delicate and feeble habit of body, but she was an intelligent woman, and her intellect was not impaired.

Josiah T. Marean, for plaintiffs.

Peter Condon, for defendant.

GAYNOR, J. The question here is not whether the mother knew what she was doing when she signed the releases, but how her intention to do so was produced. If not produced by fraud or undue influence, the releases must stand. If a trustee purchase the trust property of himself, or at his own sale, or deal with himself in any way in respect of it, the transaction is voidable at the election of the beneficiary, without regard to whether it is for an adequate consideration, or advantageous to the beneficiary. Dodge v. Stevens, 94 N. Y. 209. But this rule does not apply to a trustee dealing with an adult beneficiary concerning the trust property. If a trustee so deal directly with the beneficiary, the transaction is not voidable at the election of the beneficiary, but only by a court of equity for fraud or undue influence, provided it be found unfair to the beneficiary. Graves v. Waterman, 63 N. Y. 657; Perry, Trusts, § 195. And in such a suit, proof of the bare trust relation alone makes out a prima facie case for the plaintiff. The burden is thus put upon the trustee to show clearly and conclusively that the transaction was fair, and the free act of the beneficiary, in order to have it upheld. It is sometimes said that mere proof of the relation of parent and child (or the reverse, as in the present case), or of guardian and ward, husband and wife, attorney and client, physician and patient, or priest and penitent, without any additional relation of trustee and beneficiary, is sufficient in itself to make out a prima facie case of fraud or undue influence, and put the dominant party to his proofs; but upon close examination and analysis, this, it seems to me, is found not to be true, but that lack or inadequacy of consideration, and often particular facts of the relation, pointing to fraud or undue influence, need to be shown by the plaintiff in such a case. In re Smith's Will, 95 N. Y. 522; Carpenter v. Soule, 88 N. Y. 251; Cowee v. Cornell, 75 N. Y. 91; Bisp. Eq. pt. 2, c. 2, § 3. I think, however, that the present case comes under the rule applicable to trustee and beneficiary, with the additional relation of son and mother, to either weaken or strengthen the transactions complained of. If the mother were alive, and the plaintiff here, this would clearly appear to be so. The defendant bore a relation of trust to her which subjects him to that rule. He collected the income of her life estate, made the necessary expenditures, and was accountable to her for the balance. This was an agency which put him in a position of trust to her. Bare proof of this relation therefore made a prima facie case for the plaintiffs. But more than that was proved. The special facts and circumstances of the relation of son and mother were shown, and I think they were sufficient to rebut not only the presumption created by the prima facie case es-

tablished by proof of the bare relation of trustee and beneficiary, but also the effect of the proof of lack of full valuable consideration for the releases. The defendant was evidently the favorite child. This is evidenced by his business partnership with his father, his living from birth with his parents, both before and after marriage, and the great preference given to him by his father's will. And it is evident that the mother's affection and preference for him and his grew from her happy home life with him and his wife, and their eight growing children, during the ten years of her widowhood. It would be strange had it been otherwise; and that she was influenced by affection or gratitude is legitimate. Marx v. McGlynn, 88 N. Y. 370. On the other hand, no cause for growing affection towards her other children existed. She was free to do as she chose with her life income, and that she gave it to the defendant under the circumstances is not extraordinary. The like is very common and is to be expected. To find fraud or undue influence therefrom would seem to be contrary to the probable truth. Reasons for the making of the releases being so apparent, it would not do to find fraud or undue influence from the mere trust relation. The mother was very old, it is true, but all the evidence shows that she was intelligent, free to come and go, and betrayed no mental failing. It is also to be noted that the defendant was very low from sickness, and not expected to recover, when the mother executed the second release. His condition goes to show that he did not induce her to that act by fraud or undue influence.

Let the account be therefore taken only from the date of the last release.