WILLIAM FERRIS and MARY A. BYRNE, as Administrators, etc., of
MARY A. FERRIS, Deceased, Appellants and Respondents, *v.*
EUGENE FERRIS, JR., Individually and as Executor, etc., of EUGENE.
FERRIS, Deceased, Respondent and Appellant.

*Release executed by a mother to her son — what evidence will rebut the presumption of*
*undue influence.*

The presumption adverse to the validity of a release executed by a mother to her
son, discharging him from any obligation to her estate — his relation to which
was that of an agent, involving an element of trust, and necessitating proof
on his part that no undue influence was used — is overcome by evidence estab-
lishing the mother's long and happy home life with the son and his family dur-
ing her ten years of widowhood, and her strong and constantly growing affec-
tion for him as compared with her other children.

CROSS-APPEALS by the plaintiffs and the defendant from portions
of an interlocutory judgment of the Supreme Court, entered in the
office of the clerk of the county of Kings on the 21st day of April,
1898, upon the decision of the court rendered after a trial at the.
Kings County Special Term.

The plaintiffs appeal from so much of said judgment as adjudges
that they are not entitled to any other or further relief than is
awarded therein, and the defendant appeals from every other part
of said judgment.

The action was brought by the administrators of Mary A. Ferris,
deceased, against her son Eugene Ferris, Jr., for an accounting. A
statement of the facts of the case as follows is prefixed to the opin-
ion of the court at Special Term :

"The said Mary A. Ferris died intestate in January, 1897. Her
husband, Eugene Ferris, died in April, 1887. They resided in
Brooklyn. Five children, two of them sons (the defendant being one
of them), survived the said parents. A son of a deceased son also
survived them. The daughters were all married. One lived in
Washington, D. C., one in Atlantic City, N. J., and one in Brook-
lyn. The sons were both married and lived in Brooklyn. The
defendant was thirty-one years old when the father died. He was
in business with his father as partner. He had always lived with
his parents, and continued to do so after his marriage, and when his

father died, he and his wife and children and his mother continued as one family in the same house, which was owned by the father. The defendant has eight children. The father also owned a summer residence, a bond and mortgage for $3,000, and a lot and building in New York city worth about $100,000, in the store of which he and the defendant carried on their said business. The value of the said other real estate is not given. By his will the father left all of his estate to his widow for life. To the defendant he left the said business and the use of the said store, for which he was required to pay a rent of $2,400 a year to the widow. Upon the death of the widow the entire estate was given to the defendant, except a legacy of $10,000 to each of the said daughters, of $5,000 to the son William, of $5,000 to the said grandson, and of $1,000 to a niece. The defendant was thus given more than half of the estate. The widow and the defendant were named executors, and upon her death the settlement of the estate was intrusted to him. The collection of the income during the life estate was not intrusted to the executors by the will. The widow intrusted such collection and the management of the estate to the defendant. He collected about $200 a month of income, besides the rent for the said store due from him, making him chargeable with about $4,800 a year during the ten years of the life estate. Of this he gave the widow about $1,800 a year. He also occupied the said two residences with her without paying anything therefor. She executed three general releases to him on account of any obligation or indebtedness by him to her growing out of such relation, viz., one on May 6, 1891; one on October 7, 1893, which was confirmed on December 7, 1893, and one on January 13, 1896, and they are pleaded as defenses. They are in terms for sums stated, and love and affection. The defendant was very low in sickness, and not expected to recover, when the second was executed, and it recites that fact. They were prepared by the defendant's attorney, and he had each executed. The mother was on affectionate terms with the defendant and his wife and children, and the household was happy and harmonious. The great preference given to the defendant by the father's will caused some coldness toward him by the other children, and with the exception of the one daughter that lived in Brooklyn, they seldom saw their

mother. They all had free access to her. She was affectionate to all her children, and made regular presents of money to her daughters, and also made a gift *causa mortis* to one of them of $500 when ill a year before she died. She was eighty-six years old when she died. She was of a somewhat delicate and feeble habit of body, but she was an intelligent woman, and her intellect was not impaired."

The court held that the releases mentioned in the above statement of facts were effective to discharge the defendant from liability up to January 13, 1896, as to all matters in controversy except the interest on the $3,000 mortgage. On this appeal the plaintiffs contend that no effect at all should have been given to the releases; while the defendant insists that they operated to relieve him from liability for the mortgage interest as well as in respect to the other matters of his father's estate.

*Josiah T. Marean*, for the plaintiffs.

*Peter Condon*, for the defendant.

PER CURIAM:

The learned judge at Special Term held in substance that the relation between the defendant and his mother in reference to the estate of her deceased husband was an agency involving an element of trust, the bare proof of which raised a presumption adverse to the releases, making it incumbent upon the son to show affirmatively, in the language of *Cowee* v. *Cornell* (75 N. Y. 91), " that no deception was practiced, no undue influence used, and that all was fair." He was of the opinion, however, that the defendant had sustained the burden of overcoming this presumption by the evidence which he offered of his mother's long and happy home life with him and his family during her ten years of widowhood, and her strong and constantly growing affection for the defendant as compared with her other children, which the learned judge deemed only natural under the circumstances disclosed by the proof. Counsel for the plaintiffs concedes that great affection is always a sufficient explanation of testamentary dispositions. If its existence is satisfactorily proved — and we cannot say that it was not so proved in this case — we are unable to see why it may not also suffice to

remove all suspicion of unfairness concerning dealings *inter vivos* by which property rights are affected.

In this view there is no ground for disturbing the judgment so far as the plaintiffs have appealed from it. We think that the defendant is right, however, on his appeal in the contention that the releases should have been adjudged effective to discharge him from liability for interest on the $3,000 mortgage up to the date of the latest release. The award of costs against the defendant at this time must also be stricken out, as the judgment is only interlocutory, and the case is not that provided for in section 3232 of the Code of Civil Procedure.

All concurred.

Interlocutory judgment modified so as to exclude from the accounting thereby directed the item of interest on the $3,000 mortgage except for a period subsequent to January 13, 1896; also further modified by striking therefrom the award of costs to the plaintiffs; and as thus modified, interlocutory judgment affirmed, without costs of this appeal to either party.