(38 Misc. Rep. 367.)

### HAGAN v. WARD et al.

(Supreme Court, Special Term, New York County. July, 1902.)

1. CONTRACT—CANCELLATION—INSUFFICIENCY OF CONSIDERATION.

A woman, aged 47 years, and mentally competent, made a contract to procure money to support an extravagant life, and sold her interest in the remainder of an estate, which was in dispute, and which would vest as to her share on the death of her mother, aged 68 years. Under the contract the purchaser realized $97,000, while she, or her estate, received in cash an annuity and further payments to be made, amounting to only $44,537. *Held*, that the contract would not be set aside for inadequacy of consideration, at the suit of a legatee to a small extent under her will.

Action by Katherine C. K. Hagan against Sidney Ward and others to set aside a contract. Judgment for defendants.

See 68 N. Y. Supp. 1003.

Manice, Abbot & Perry (Albert Stickney, of counsel), for plaintiff.
Daniel Whitford, for defendant Sidney Ward.
Forster, Hotaling & Klenke (Allan McCulloh, of counsel), for defendant Louis V. Sone.
George P. Hotaling, Cary & Whitridge, for defendants Kitty Sutherland, Barbara Sutherland, and Barbara Fenwick.

FITZGERALD, J. · Plaintiff is one of the legatees under the will of Mrs. Anna Sutherland, deceased, and brings this action to set aside a contract made by her testatrix with defendant Sone. The testatrix had a vested remainder, limited upon the life of her mother, Mrs. Skinner, in the estate of her brother, Francis C. Fleming; and the defendant, under the will of Henry Fleming, was vested with a remainder in the same estate. Sone and testatrix were the only persons interested in this remainder; and whether it was owned by them in equal proportions, or whether testatrix's share was two-thirds and Sone's but one-third thereof, is a question as yet undetermined, and is the subject of an action still pending. The grounds for the relief as set forth in the complaint are inadequacy of con-

sideration, fraud, and duress. . Mrs. Sutherland had been twice married, and plaintiff is her daughter by her first husband, and her only child. When she (plaintiff) was but five years old, her father and mother were divorced, and plaintiff lived thereafter with her father, and attained the age of womanhood without further intercourse with her mother, who never seems to have manifested the slightest concern about her welfare. Sutherland, the second husband, died in 1893, and testatrix, who had become very much estranged from her mother (Mrs. Skinner), lived thereafter among strangers. Her manner of life at this time appears to have been dissipated and reckless, and it is admitted that within a period of two years she squandered over $100,000, she drank excessively, and suffered from physical ailments, chiefly produced by overindulgence in intoxicants. In the fall of 1895, the only property she possessed consisted of the remainder before referred to, and some proposals for advances thereon were made to Sone by her attorneys, but were rejected by him. Ultimately, however, the agreement now under consideration was executed. The value of the estate of Francis C. Fleming was at this time about $300,000, subject to life estates. Mrs. Sutherland's share, plaintiff contends, was two-thirds of the remainder, but defendant insists it was only one-half. A decision of the issue raised by the pleadings does not require me to pass upon this question, but I am bound to consider it in so far as its unsettled condition may have operated upon the minds of the parties at the time the agreement was made. The agreement was, in substance, that Mrs. Sutherland was to transfer to Sone her entire interest in the remainder, and that as a consideration therefor Sone was to pay her $6,000 down and $6,000 per year in quarterly payments, and a gross sum (out of the portion of the estate assigned to Mrs. Sutherland), varying in amount from $50,000 to $25,000, dependent upon the duration of Mrs. Skinner's life, which gross sum was to be paid Mrs. Sutherland if living, otherwise to such parties as she by last will and testament might direct. In the event of plaintiff's testatrix surviving Mrs. Skinner and personally receiving such gross sum, interest at the rate of 5 per centum was to be charged thereon, and the amount agreed to be annually paid was to be correspondingly reduced. Defendant contends that what he received (basing his estimate upon the theory that he, as the legatee of Henry Fleming, is entitled to one-half of the remainder) was property of the value of $150,000, less the value of the life estates to be deducted therefrom, which, according to the testimony, was $52,341, or, in round numbers, something over $97,000 in value. The total amount paid to plaintiff's testatrix was $14,537.72, with $30,000 to be paid under the directions of her will. If we merely contrast these figures, the amount paid must seem grossly inadequate; but it would be unfair to measure the adequacy of the consideration by the sum actually paid. The fairer measure is that of the nature of the liability incurred. The mere fact that a person derives enormous profits as the fruit of an agreement dependent upon contingencies cannot be claimed as sufficient to warrant the court in adjudging the price unconscionably small. "Inadequacy, in order that

it may ever be fatal, must exist at the concluding of the contract."
Pom. Eq. Jur. § 927; Mortimer v. Capper, 1 Brown, Ch. 156. Sone's
liability was dependent upon lives. Mrs. Sutherland was at the time
48 years of age, and Mrs. Skinner was 68. Sone bound himself
to pay upon contingencies, and, while he took measures to assure
himself of the probable duration of Mrs. Sutherland's life in view of
the progress of her disease, it cannot be said that he assumed no·
risk. Plaintiff's theory is that the number of her mother's days war
actually fixed, but, in the light of the evidence, who can say how many
years that life might have been prolonged by reform of bad habits
and by seasonable changes of surroundings and climate? What
power did defendant have over Mrs. Sutherland? Was she not free
to exercise her independent will and judgment? Her mental capacity
is not questioned, nor could it well be in view of the decision in Hagan
v. Sone, 68 App. Div. 60, 74 N. Y. Supp. 109. When we remember
how rapidly the large sum before mentioned slipped through her
fingers, it is not to be wondered at that she was desirous of securing
an annuity. Such method of compensation would be the greatest
personal benefit to her. A large sum in her hands she might have·
well assumed she would be unable to husband, and as large an as-
sured income as she could get was what would be for her advantage.
If this were not so, would she not have accepted the advance of
$20,000 then offered? There was no person in the world outside of
herself in whom she was interested. She had no love for the plain-
tiff, and plaintiff never manifested any concern about her. The be-
quest in her will, which gives the plaintiff the right to maintain this
action, is a small one. In Cowee v. Cornell, 75 N. Y. 91, 31 Am.
Rep. 428, it was held that the fact that one of the parties was ex-
tremely aged and infirm and the other young and strong raised "no
such conclusive presumption of inequality as imposed the burden
of proving that no deception was practiced." In Parmelee v. Came-
ron, 41 N. Y. 392, the court said: "There is no general rule of
equity which relieves a party from hard and unreasonable bargains,
after they become executed, merely because they are such. On the
contrary, mere inadequacy is not sufficient ground for avoiding a
sale unless the inadequacy is so gross as to afford presumptive evi-
dence of actual fraud, or is attended with actual fraud, surprise,
ignorance, mistake, delusion, or imbecility of mind." That the con-
dition of Mrs. Sutherland was necessitous must be admitted, and,.
if that fact was sufficient to avoid the agreement, plaintiff's cause
of action would be established; but upon this point the weight of au-
thority is directly opposed. Van Brunt, P. J., in Carley v. Tod, 83
Hun, 53, 31 N. Y. Supp. 635, says: "Necessitous situations upon
the part of a borrower always enable a lender to make a hard bar-
gain;" and again, in the same opinion, denying the power to set
aside such agreements, remarks "that, if a man sells too cheap be-
cause he wants to realize the money, and the other will not give·
him more for his property because he knows that he is in neces-
sitous circumstances, commercial transactions might as well cease,
because it would be impossible to tell, when contracts were made,.

whether they would not be set aside upon the ground that one party had taken advantage of the other." To quote again from the opinion in Hagan v. Sone, supra, when the question of testamentary capacity of plaintiff's testatrix was under review, Ingraham, J., says: "During all this period down to death she attended to her own business, received her income, paid her bills, and, so far as I remember, no one testified that she indicated any mental confusion when not intoxicated." She was represented by competent attorneys, whose good faith must be presumed, and whose letters to defendant's attorney all point to her fixed purpose of bargaining for income, which, upon a consideration of all the facts, must be admitted to have shown good judgment upon her part. In addition to the deductions to be made on account of the life estates, there was also a liability upon the mortgages given to secure Mrs. Skinner upon the settlement of the litigation over the estate of Thomas Fleming; and while Sone's agreement, looking at it from a purely moral and sympathetic standpoint, may have been harsh and exacting, I am still forced to the conclusion that under the authorities it cannot be held to have been inequitable. Harrison v. Guest, 6 De Gex, M. & G. 424, 8 H. L. Cas. 481; Pom. Eq. Jur. 948. Judgment for defendants.

Judgment for defendants.