JEANNE CLUZEL, complainant-appellant,

*v.*

BLANCHE BERGDORF BROWN and EVERETT W. BROWN, individually, and as executors of the will of Eugenie Bergdorf, deceased, and JULIETTE SEBASTIANI, defendants-respondents.

[Argued October 23d, 1942. Decided January 22d, 1943.]

*Mr. Leo Yanoff,* for the complainant-appellant.

*Mr. Sydney G. Soons (Mr. Harrison F. Durand,* of counsel), for the respondents Blanche Bergdorf Brown and Everett W. Brown, as executors of the will of Eugenie Bergdorf, deceased, and Everett W. Brown, individually.

*Mr. Arthur T. Vanderbilt,* for the respondents Blanche Bergdorf Brown, individually, and Juliette Sebastiani.

The opinion of the court was delivered by

COLIE, J.

This is an appeal from a final decree dismissing the bill of complaint filed by Jeanne Cluzel, a niece and residuary legatee under the will of Eugenie Bergdorf. The defendants are an adopted daughter of testatrix, Blanche Bergdorf Brown, and her husband, Everett W. Brown. They are joined individually and as executors under the will of Mrs. Bergdorf. The third defendant is Juliette Sebastiani, a daughter of Blanche Bergdorf Brown by a former marriage. The bill sought to set aside three transfers made in the month of October, 1937, from separate savings accounts in the name of Eugenie Bergdorf, on the ground that the transfers were improvidently made and were obtained by fraudulent misrepresentations and by the exercise of duress and undue influence. The bill of complaint was dismissed because of the failure of complainant to prove undue influence. We are of the opinion that the learned Vice Chancellor fell into error in holding that the burden of proof of undue influence was upon the complainant.

The question of who bears the burden of proof is dependent upon the resolution of the preliminary question as to whether or not a relation of confidence and reliance existed as between Mrs. Bergdorf and the defendants, or some of them. If it did not exist, then the burden was upon the complainant to prove undue influence. If it did exist, then the burden of proving that the transfers in question were fair and equitable shifted to the defendants. As was said by Vice-Chancellor Green in *Mott* v. *Mott, 49 N. J. Eq. 192* (at *p. 200*)—a case involving the validity of a deed given to a son by his aged mother: "We enter on this inquiry not with a view of ascertaining if that extreme control which characterizes what is technically known as 'undue influence' existed, but whether Mrs. Mott, when executing this deed, placed such confidence and reliance in her son that the burden of proof is thrown upon him of showing that such confidence was not abused." This expression has been approved by the Court of Errors and Appeals in *Peppler* v. *Roffe, 122 N. J. Eq. 510*. If the

person in whom confidence and reliance is reposed occupies a position enabling him to exercise domination over the mind of the donor, then the burden of proving the transaction to be fair and equitable falls upon him. With this rule in mind, let us examine the evidence with a view of determining who, as between the donor and these defendants, was or were in the position of dominance.

Eugenie Bergdorf died on January 5th, 1938, at the age of 76. The household then consisted of Mr. and Mrs. Brown and Juliette Sebastiani. The Browns were married in 1935 and shortly thereafter took up residence in Mrs. Bergdorf's home. About that time Mr. Brown lost his position as an assistant cashier with the National City Bank, a type of work that he had been engaged in for 19 years. The arrangement appears to have been that Mr. Brown paid the food bills and something toward the household expenses, while Mrs. Bergdorf paid for the gas, electricity, oil and the interest on the mortgage. The cardiac condition from which Mrs. Bergdorf suffered grew worse in the summer or fall of 1937 and her medical adviser placed her upon a routine treatment therefor at her home. On October 5th, 1937, she was taken to a hospital where she remained until October 20th. When admitted to the hospital, her illness was objectively evidenced by pededema, which is an infiltration of serum into the feet, resulting in swelling; cyanosis—a bluish discoloration of the skin from deficient oxidation of the blood, a condition frequently seen in cases of cardiac failure—and a bed sore at the base of her spine. The attending physician indicated the seriousness of her illness to the Browns and made it clear to them that hospitalization was imperative. From the hospital records it is clear that during her stay her respiration was labored; that she was, on occasion, apathetic, nervous and apprehensive, crying and mentally depressed; that on at least two dates, she wandered mentally, suffered from hallucinations, and was slightly disoriented. The general picture presented by the records discloses a serious condition of illness. At the end of two weeks she was discharged and returned to her home where her condition further improved, then lapsed and became progressively worse until her death.

It is clear from the evidence that the granddaughter, Juliette Sebastiani, was a great favorite of Mrs. Bergdorf and that the rather infrequent periods when she was at home and not in school, were enjoyed by Mrs. Bergdorf. Mrs. Brown was also firmly implanted in the affections of her mother, although the evidence indicates that they did not see eye to eye when it came to a question of money matters. An example of her fondness for and dependence upon Mrs. Brown is evidenced by the fact that while Mr. and Mrs. Brown were away on their wedding trip, Mrs. Bergdorf became so lonely that in answer to a telegram, the Browns cut short their wedding trip to return to her.

From Mrs. Brown's testimony at the final hearing, it is clear that her understanding of the handling of funds and appreciation of financial affairs was scant. As an example, we refer to her testimony in which it was sought to elicit from her the value of her share in the trust fund established by Mr. Bergdorf which she received shortly after the death of Mrs. Bergdorf. She said that "it was several thousand dollars" when, in fact, its market value in 1937 was upwards of $60,000. Everett W. Brown had received some training in business law and allied fields. That he enjoyed the complete confidence of Mrs. Bergdorf is evidenced by her having given to him in 1935, two years prior to the transactions in question, a general power of attorney. The significance of a general power of attorney has received the comment of the Court of Chancery in *Mott* v. *Mott, supra,* the court there saying: "If they were absolute and unqualified powers of attorney, they are plenary evidence of the utmost confidence and reliance reposed by his mother in him." There is other evidence of great confidence in Mr. Brown, shown by the fact that Mrs. Bergdorf named him as one of the executors of her will and also it is in the proofs that he assisted Mrs. Bergdorf in making changes in her last will and testament. On the copy of a former will, Mr. Brown made notations, including the substitution of himself as executor in the place of the Guaranty Trust Company of New York. After these changes were made, he took the notes to a New York lawyer who drew the will, which was then delivered to Mr.

Brown, who attended to its execution. Despite the fact that Mr. Brown assisted in the gathering of data for the preparation of Mrs. Bergdorf's final will, he testified on the stand that "We did not discuss wills in the house or what she was going to do with her money at all. * * * Money was never discussed and wills were never discussed in our house." On the evidence produced by the defendants on final hearing, we can arrive at no other conclusion than that Mr. and Mrs. Brown enjoyed the confidence of Mrs. Bergdorf and that she relied upon Mr. Brown especially.

In 1933 Mrs. Bergdorf executed a last will and testament in which she devised and bequeathed the residue of her estate to Jeanne Cluzel and named her and one Kersten as executors. In 1935, a new will divided the residue equally between Jeanne Cluzel and Juliette Sebastiani. Blanche Exerett Brown and Guaranty Trust Company were therein named executors. Then, on August 27th, 1937, less than five months prior to her death, a further will was drawn which again divided the residue between Jeanne Cluzel and Juliette Sebastiani. Mrs. Brown was retained as executrix and Mr. Brown substituted in the place of Guaranty Trust Company. It was in connection with this will that Mr. Brown testified that he assisted Mrs. Bergdorf "in perfecting it." From these wills it is patent that beginning in 1933, Mrs. Bergdorf had in mind a definite testamentary plan by which Jeanne Cluzel was to receive the residue, or, from 1935 on, share it with Juliette Sebastiani. What took place between August 27th and October 25th, 1937, the date of the last of the three transfers called in question, that prompted Mrs. Bergdorf to reduce by $7,500 the share that Jeanne Cluzel would receive from her estate? Mrs. Brown purports to give the answer: "Mother suggested to me that as long as I didn't have any money and Mr. Brown had lost his position, she wanted me to have something on hand, she wanted to give me a gift." And, again, "Mother said that she wanted Juliette to continue, or rather Juliette expected to continue in Italy and therefore mother wanted her to continue and wanted to give her this money so that she would be able to study in Rome." Again, "Mother said she wanted Juliette to be taken care of,

Mr. Brown had lost his position and he wasn't able to take care of us as he had when we were first married, therefore, mother wanted Juliette to continue her studies."

Turning to the withdrawals under attack, we find that on October 18th, 1937, $3,000 was withdrawn from The Greenwich Savings Bank by check to the order of Eugenie Bergdorf who in turn endorsed it in blank and it was thereafter deposited in Mrs. Brown's account. This took place on the day following the entry on the hospital records of a notation that "Pt. appears slightly disoriented." The next withdrawal in the sum of $6,000 was from The New York Savings Bank on October 21st, 1937; one day after Mrs. Bergdorf had been discharged from the hospital. This withdrawal slip was signed by Mrs. Bergdorf in blank and the name of The West Englewood National Bank as payee, and the amount $6,000, was filled in later by a Mr. Bayles of the West Englewood Bank. His authority for so doing was a purported conversation had with Mrs. Bergdorf on January 13th, 1937, nine months before, in which he asserts that he was given authority to act upon Mrs. Bergdorf's instructions imparted to him by Mrs. Brown. Upon the withdrawal slip being honored, the West Englewood National Bank, by its assistant cashier, Mr. Bayles, drew the bank's check for $6,000 to *Juliette Sebastiani*. The withdrawal of $6,000 from Emigrants Industrial Savings Bank was made on October 25th, 1937, by a check to Juliette Sebastiani.

Where a person obtains the legal title to property by circumvention, imposition or fraud or by virtue of a confidential relation and influence under such circumstances that he ought not according to equity and good conscience hold and enjoy the beneficial interest of the property, courts of equity will raise a trust by construction out of such circumstances. *Perry on Trusts* § *166; Pom. Eq. Jur.* § *1044*. In this state the rule is settled that "the influence of the parent over his child, during the tender years of infancy, is so controlling that it regards transfers from the child to the parent, on arriving at majority, or immediately thereafter, as having been made under the influence of over-weening confidence. As the child matures and acquires experience and independ-

ence the presumption weakens and at last ceases. As the parent, however, advances in years, the condition of dependence may be reversed by the hand of time. If life draws to a close with a failing intelligence and enfeebled frame, the parent naturally looks with confidence to a son or daughter for advice and protection. The parent becomes the child, 'with the same dependence, over-weening confidence and implicit acquiescence' which had made the other, in infancy, the willing instrument of the parent's desires. *Mott* v. *Mott, supra; In re Fulper, 99 N. J. Eq. 293.* As was said by Mr. Justice Heher for the Court of Errors and Appeals in *Peppler* v. *Roffe, supra,* "In invoking the general rule applied in *Bankers Trust Co.* v. *Bank of Rockville Center Trust Co., 114 N. J. Eq. 391,* that the law will raise the presumption of a gift by a father to his son where it will not be indulged in like transactions between strangers, the learned Vice-Chancellor fell into error. That principle is applicable only when the parent is not the dependent of the child. Here, due to age and the ravages of an incurable disease, and a natural reliance over a period of years upon the son's advice in matters of business and property as well as in family affairs generally, the normal relation between the parent and the child had been reversed, with dominancy in the son; and in these circumstances the presumption of controlling influence by the dominant party obtains." The facts in the instant case parallel those in *Peppler* v. *Roffe, supra.*

This court in *Croker* v. *Clegg, 123 N. J. Eq. 332* (at *p. 335*), adopted the language used in *Cowee* v. *Cornell, 75 N. Y. 91,* that the test is whether the relations between the parties are "of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood."

We find that Blanche Bergdorf Brown and Everett W. Brown were, by reason of the circumstances set forth above, in a position to exercise domination over the decedent, that the burden of proof shifted to them to establish that the transfers were fair and equitable, and that they have not met this burden.

As to the defendant, Juliette Sebastiani, although she obviously did not occupy a dominant position so far as Mrs. Bergdorf was concerned and obviously had no knowledge of the events leading up to and culminating in her receiving the $12,000, nevertheless she cannot be permitted to profit by the fraud of another, even though she had no notice thereof. *Pom. Eq. Jur.* § *1053; Scott on Trusts* § *469; Roy* v. *Enot, 120 N. J. Eq. 67.*

The decree of the Court of Chancery is reversed, and the cause remanded to the end that a decree may be entered in accordance herewith.

*For affirmance*—THE CHIEF-JUSTICE, DONGES, PORTER, WELLS, JJ.   4.

*For reversal*—PARKER, CASE, BODINE, HEHER, PERSKIE, COLIE, DEAR, RAFFERTY, HAGUE, THOMPSON, JJ.   10.