FERGUSON v. NETTER.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

1. SALES (§ 347*)—AGREEMENT OF SALE—BUYER'S DEFENSE.

The buyer of goods ordered them on the express condition and requirement that they should be of good, merchantable quality, and before their arrival the buyer accepted the seller's draft. On examination of the goods upon their arrival, the buyer claimed that they were inferior in quality to the goods ordered, and refused to accept them or to pay the draft on presentation by the seller. *Held* that, as between the seller and the buyer, the buyer had the right to refuse the goods, and upon his doing so the consideration for his acceptance failed, and the seller could not force a recovery upon the acceptance.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 962–972; Dec. Dig. § 347.*]

2. BILLS AND NOTES (§ 318*)—ASSIGNMENT—DEFENSES AS AGAINST ASSIGNEE.

Under Negotiable Instruments Law (Consol. Laws, c. 38) § 50, providing that every negotiable instrument is presumably issued for a valuable consideration, and section 54, making failure of consideration a defense against holders not in due course, an assignee of a bill of exchange takes it subject to the defense of failure of consideration for the acceptance.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 754; Dec. Dig. § 318.*]

McLaughlin and Dowling, JJ., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by William A. Ferguson against Charles S. Netter. From a directed verdict for the plaintiff, the defendant appeals. Judgment reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

David Bernstein (I. Maurice Wormser, of counsel), for appellant. Maurice Leon, for respondent.

INGRAHAM, J. The action was brought to recover upon an acceptance of a draft drawn by the plaintiff's assignor upon the defendant, a resident of the city of New York, dated the 30th day of December, 1907. This draft was drawn in France, and requested the plaintiff on March 15th to pay to the order of himself, the drawer, the sum of 307 francs, 35 centimes, "value received in merchandise." Upon this draft was written the words, "Accepted Jan'y 28th, 1908," and it was signed by the defendant. The complaint alleges that on or about the 16th of March, 1908, the said bill so accepted was duly presented to the defendant for payment, but was not paid and was thereupon duly protested for nonpayment; that on or about the 26th of August, 1908, the drawer of the draft, for a valuable consideration, duly assigned said bill to the plaintiff.

The defendant in substance admitted the acceptance of the draft, and that it was assigned by the drawer to the plaintiff, and alleges that the plaintiff paid no value therefor and took the assignment with knowledge of the equities existing between the defendant and the plaintiff's assignor. For a separate defense the answer alleges that the drawer of the draft (plaintiff's assignor) undertook and did sell to this defendant, and said defendant undertook to and did purchase from the plaintiff's assignor, certain goods, wares, and merchandise, consisting of 50 cases of "preserved dried mushrooms," to be shipped from France, such mushrooms to be of dried and choice quality; that the bill of exchange sued upon in this action was drawn by the plaintiff's assignor against the consignment of the aforesaid 50 cases of mushrooms; that the defendant could not get an examination of the aforesaid mushrooms in order to determine whether the same were of dried and choice quality without the defendant's previous acceptance of the bill of exchange sued upon in this action and against which the same was drawn; that the defendant, relying upon and believing the representations of the plaintiff's assignor that the mushrooms were of the aforesaid quality, on the 28th day of January, 1908, accepted the aforesaid bill of exchange upon the express condition, however, that the mushrooms shipped by the plaintiff's assignor were dried and of choice quality and not otherwise; that the plaintiff's assignor pretended to comply with the aforesaid agreement, shipped the mushrooms to the defendant, which were and are of inferior quality, mouldy, and not choice quality; that the goods sold were not merchandise and were of no value to the defendant; that this defendant failed and refused to accept the same as a compliance with the agreement aforesaid; that, as soon as the defendant ascer-

tained the quality of the mushrooms thus shipped to the defendant, the defendant stored the same for and on account of the plaintiff's assignor and gave due notice to the plaintiff's assignor that the said mushrooms were so stored in the city of New York for the plaintiff's assignor's account and subject to his order; that there was no consideration for the acceptance by the defendant of the aforesaid bill of exchange.

Upon the trial the plaintiff introduced the assignment of the bill of exchange, which recited a consideration of $1, and the bill of exchange with the acceptance of the defendant, and it was stipulated that the bill of exchange was presented by the plaintiff's assignor for payment on the day it was due, and it was not paid. The plaintiff then rested. The defendant proved that he purchased 50 cases of mushrooms by a cable message, dated December 1, 1907, in French, the translation of which was "January 33995 competition from Italy." The figures "33995" was a code word, meaning 50 cases 12 tins each dried mushrooms, 5 pound tins at 550 francs per 100 kilos against documents; and upon the receipt of this cablegram on the 2d of December, 1907, the plaintiff's assignor wrote to the defendant that he had received this cablegram and confirmed the sale of 50 cases, 12 tins each "dried mushrooms 5 lb. tins at 550 francs per 100 kilos net against documents." This letter was answered by defendant on December 18, 1907, in which he said: "I confirm your letters dated Dec. 2nd, and 5th." In speaking of former shipments, the defendant stated that he had had cases returned and had to make considerable allowance for them. He suggested that this was because the mushrooms were not sufficiently dried, and, being hermetically sealed, they get heated and become mouldy, and asked the plaintiff's assignor to be in no hurry with the shipment of 50 cases, "to let the mushrooms get dry and make a good selection of the goods and they are bright, sound, and dry." In reply to this letter, the plaintiff's assignor wrote that he was to ship the 50 cases of mushrooms on the defendant's demand between the date of the letter, December 18th, and the end of January; that when he received the defendant's cable he would put them on the railroad. In answer to this the defendant wrote, on December 30th, that he would cable the plaintiff's assignor during the month of January for 50 cases, requesting the plaintiff's assignor to "open several tins and see if towards the middle of the tin the mushroom is not warm," repeating to the plaintiff's assignor that the article "must be of absolute conservation, well dried and as light in color as possible."

It further appeared that these mushrooms arrived in New York on the 27th of January, on the steamer Adriatic; that the bill of exchange arrived a few days before and was presented to the defendant and accepted by him on the 28th of January; that it took two or three days to clear the goods and obtain possession of them so as to be able to examine their quality; that the defendant examined the goods as soon as he received notice from the warehouse, and on February 7, 1908, he wrote to the plaintiff's assignor that the defendant was compelled to reserve final acceptance of the last shipment of 50

cases. The defendant, on February 29th, wrote to the plaintiff's assignor that the quality of the mushrooms was bad. On April 8th the defendant wrote the plaintiff's assignor that he held the 50 cases of dried mushrooms at the disposal of the plaintiff's assignor. The defendant then testified that he examined the goods as soon as he received them in a warehouse in the city of New York; that they remained there until March 26th of the same year, when they were put in cold storage, where they now are. He produced tins of mushrooms taken from one of the cases, and testified that on the 5th or 6th of February, 1908, he opened seven or eight tins, one from each case; that he found some of the tins utterly worthless, black, mouldy, and wet; that some of the tins had "nice mushrooms on the top," but when it came towards the middle of the cans they were black and mouldy and wet. And there was further evidence for the defendant that the mushrooms, properly dried, would keep for years; that the goods in question, samples of which were produced in court, were black, mouldy, and wet, and unfit for eating purposes; that the mushrooms were not of a merchantable quality, and, if they were accepted, they would not be allowed to be sold by the board of health. The defendant then rested, and the plaintiff made a motion to direct a verdict for the plaintiff. The defendant requested the court to submit the question as to whether the defendant had a reasonable opportunity to inspect the mushrooms before acceptance of the draft on the 12th of January, 1908, to the jury, which was refused, and the court directed a verdict for the plaintiff, to which the defendant excepted. The defendant then asked the court to send the case to the jury upon all the facts, which was also refused, and the defendant excepted.

It is clear, I think, that the mushrooms were not of a merchantable quality and did not conform to the order sent to the plaintiff's assignor and which were not of the quality that the defendant was bound to accept. The acceptance of the bill was based upon what was assumed to be the shipment of mushrooms that complied with the order, and on a refusal of the defendant to accept the mushrooms, based upon the fact that the mushrooms were not merchantable, the consideration for the acceptance fell, and, as between the original parties to the bill, the defendant could allege a failure of consideration which would be a defense to the action on the acceptance.

It was conceded upon the trial that the plaintiff's assignor caused the bill to be presented for payment when due and subsequently assigned the bill to the present plaintiff for a nominal consideration. All the equities as between the defendant and the plaintiff's assignor were open to the defendant, and, if there was absolutely no consideration for the acceptance, it is clear that the plaintiff could not enforce the bill.

By section 50 of the negotiable instrument law (chapter 612 of the Laws of 1897, re-enacted in Consol. Laws, c. 38; Laws 1909, c. 43), it is provided that every negotiable instrument is assumed prima facie to have been issued for a valuable consideration. Section 54 provides that the absence or failure of consideration is matter of defense as against any person not a holder in due course. See, also, Cowel v.

Cornell, 75 N. Y. 91; 31 Am. Rep. 428; Batterman v. Butcher, 95 App. Div. 213, 88 N. Y. Supp. 685. In Nat. Park Bank v. Saitta, 127 App. Div. 624, 111 N. Y. Supp. 927, affirmed 196 N. Y. 548, 89 N. E. 1106, it was held that as between any parties to a bill, except the drawer and the drawee, who had purchased the bill for a valuable consideration, the defense of want of consideration was not available; but it is assumed in the opinion that, as between the original parties to the bill, the question of consideration is always open. Now, the only consideration for the acceptance of this bill was the sale and delivery by the plaintiff's assignor to the defendant of the mushrooms in question. The plaintiff's assignor shipped the mushrooms to the defendant, who examined them as soon as possible, but which was after the acceptance, and they were found not to be merchantable and not to be a compliance with the contract. Consequently, the defendant had the right to reject the mushrooms, and, having rejected them, there was no consideration for the acceptance, and the plaintiff's assignor could not recover upon it.

It may be that upon the facts there was a question for the jury as to whether or not the defendant accepted the mushrooms and whether the mushrooms were of such a quality as justified a refusal to accept; but it was certainly error to direct a verdict for the plaintiff, and for that reason the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

CLARKE and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). The draft was accepted on the 28th of January. It was absolute upon its face, and I think there was a good consideration for it. The defendant did not promptly reject the mushrooms after he had had an opportunity to examine them. He testified that he did examine them on the 5th of February, but it was not until the 13th of March that he notified the plaintiff he would not accept them except on consignment. He could not receive the mushrooms and deal with them as he did, and then refuse to pay the draft on the ground that there was no consideration for it. Upon the undisputed facts I think he accepted the mushrooms, and, if they did not correspond to what the plaintiff had agreed to furnish, then his claim was for damages for breach of contract, which he could have pleaded, had he seen fit to do so, by way of counterclaim.

For these reasons I dissent from the prevailing opinion.

DOWLING, J., concurs.