BRONX COUNTY TRUST COMPANY and Another, as Administrators of the Estate of ELLEN CAMPBELL, Deceased, Appellants, *v.* FRANCES H. O'CONNOR, Also Known as FRANCES H. FLANAGAN, and Another, Respondents, Impleaded with FRANCES V. O'CONNOR, as One of the Administrators of the Estate of ELLEN CAMPBELL, Deceased, Defendant.

First Department, April 22, 1927.

Injunctions — action to impress trust on funds received by respondents from sale of corporate stock belonging to testatrix — facts alleged indicate fraud and undue influence — injunction pendente lite granted restraining disposal of proceeds.

This is an action to impress a trust on money received by the respondents from the sale of corporate stock alleged to have belonged to the testatrix. It appears that the testatrix who was fatally ill moved from the home of one niece to the home of the respondents, who are other nieces; that her condition became rapidly worse and a short time before her death the corporate stock, possession of which was in the respondents, was sold by a brokerage concern, upon the authority of a letter written by one of the respondents and signed by the testatrix, and the proceeds were divided between the respondents. It also appears that five days before the death of the testatrix she executed a deed of trust for the benefit of one of the respondents. The papers also show that there is no denial by the respondents that a substantial part of the fund has been spent by them, and that they are likely to spend a large part of the remainder.

Under the facts which indicate that the respondents committed a fraud upon the testatrix and exercised undue influence, and that they are not responsible, an injunction *pendente lite* restraining them from further disposing of the fund is granted.

APPEAL by the plaintiffs, Bronx County Trust Company and another, from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 11th day of March, 1927, denying their motion for an injunction restraining the respondents *pendente lite* from disposing of the proceeds of a sale of certain shares of stock which had been owned by Ellen Campbell, the decedent.

*Harry Sacher* of counsel [*Monroe Goldwater* with him on the brief; *Mencher, Sacher & Mencher*, attorneys for Mary A. Haas; *Deiches, Goldwater & Flynn*, attorneys for Bronx County Trust Company], for the appellants.

*Guernsey Price* of counsel [*Richard Ely* with him on the brief; *Ely & Price*, attorneys for Frances H. Flanagan, also known as Frances H. O'Connor, and Madelon R. O'Connor], for the respondents.

MARTIN, J. The administrators of the estate of Ellen Campbell have brought this action to impress a trust on the sum of $138,409.75 received by the respondents from the sale of 4,252 ordinary shares of the British-American Tobacco Company, Ltd., and 794 ordinary shares of the Imperial Tobacco Company, Ltd., owned by the deceased and known to have been in her possession a short time before her death. The complaint alleges a conversion by the respondents of the stock and the proceeds thereof and the sale as well as procurement thereof through fraud and undue influence.

The Special Term denied the motion to continue *pendente lite* the injunction, embodied in the order to show cause, restraining the respondents from disposing of such proceeds of sale. This court granted an application to continue the injunction pending the determination of the appeal. (See 219 App. Div. 824.)

The deceased was an unmarried woman upwards of seventy-five years of age at the time of her death on June 24, 1926. For several years prior thereto she had suffered from a cancerous tumor. In the fall of 1925 she became wholly disabled and thereafter she remained bedridden until her death. Though advised by the doctor who had been in attendance upon her for upwards of eighteen months that removal from her bed would result inevitably in her early death, she insisted on leaving the residence of her niece Sarah Kaplan with whom she had resided for eighteen months, to live with other nieces, the respondents O'Connor, saying that the respondents had coaxed her for so long a time to live with them that she could no longer refuse. Accordingly she was removed in May, 1926, six weeks before her death, to the O'Connor apartment, where her condition became worse rapidly.

The respondent Frances H. O'Connor assumed control of her as nurse, and, it is said, on several occasions refused Mary A. Haas, a sister of the decedent, permission to see her.

At the time of her removal the deceased had a trunk delivered to the apartment of the respondents in which she kept, among other things, 4,252 shares of British-American Tobacco Company stock and 794 shares of Imperial Tobacco Company. She was unable to leave her bed, with the result that the only persons who had access to the trunk were the respondents. At times they had the key in their possession for the purpose of opening it. Within a fortnight after her removal, the respondent Madelon R. O'Connor, who was employed as a telephone operator by a brokerage firm, delivered to its office the 4,252 shares of British-American Tobacco stock and the 794 shares of Imperial Tobacco shares with instructions to sell the same on account of the deceased and pay the

proceeds to herself and her sister, the respondent Frances H. O'Connor. She was told by the trading manager that her word was insufficient authority to sell the certificates and was asked for a letter of instruction. He retained the certificates which were delivered to him on May 24, 1926, and thereafter a letter dated May 26, 1926, directing his firm to sell the stock and divide the proceeds between the respondents was delivered to him. The entire body of the letter is in the handwriting of Madelon R. O'Connor.

The stocks were sold by said brokers, who paid over to each of the respondents $69,204.87 on June 18, 1926.

On June 19, 1926, only five days before her death and but a day after the respondents had received the $138,409.75, the deceased executed a deed of trust to the New York Trust Company, by the terms of which the deceased transferred to it 666 shares of British-American Tobacco Company stock as well as alleged lapsed legacies of her brothers Edward Campbell and William A. Campbell in the estate of the deceased's brother Daniel J. Campbell, in addition to a claim of $5,600 against Sarah Kaplan and several deposits in banks. This trust was to pay the income thereof to the deceased during her lifetime and, upon her death, to transfer the same to the respondent Frances H. O'Connor.

Several months before her removal to the O'Connor residence, the deceased executed a will making specific bequests to each of her sisters and leaving the residuary estate to her niece Sarah Kaplan. This will, which made no mention of the respondents, was destroyed shortly after the deceased was removed to their apartment and just prior to her death.

The only property which the deceased left undisposed of was 2,384 shares of Imperial Tobacco stock which had been retained by Sarah Kaplan without the knowledge of the deceased when the latter was removed. Apparently both the deceased and the respondents were ignorant of the existence of these shares, inasmuch as she disposed of virtually all of her other property by the trust deed.

The affidavit of Mary A. Haas, a sister of the decedent, avers: "That the defendants have no other property outside of the proceeds of the sale of the stock with respect to the disposition of which this injunction is sought. That the said defendants have, since the death of the deceased herein, spent large sums of money and have substantially reduced the amount of the said proceeds. That the said defendants have stated that they intend to travel extensively and deponent verily believes that they will spend large sums of money on such travels and will continue to dissipate the moneys which have thus come into their possession

and will thereby render ineffectual any judgment which the plaintiffs herein may obtain against them."

In opposing affidavits the respondents deny that they have no other funds and state that they have sufficient money aside from the fund involved in this action to meet their cost of living during the pendency of the action. They do not, however, aver affirmatively that they have not used any of this fund, nor do they state that they will not during the pendency of the action dissipate any part of it.

There is no one who states that he saw the deceased sign the letter of instruction to sell the stock. The deceased was dying from a very serious disease and from time to time was being administered drugs, though it is said the amount of drugs used was never sufficient to induce sleep or cloud her mentality. It is averred the deceased gave the property to the respondents because of affection for their mother. Their mother knew very little about the gift, testifying in the Surrogate's Court that all she knew was that the decedent told her she was going to make the gift. She did not see any gift made.

In *Cowee* v. *Cornell* (75 N. Y. 91) it was said: " We return then to the question whether this case was one of constructive fraud. It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not presumed but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled. (HUNT, J., *Nesbit* v. *Lockman*, 34 N. Y. 167; * * * *Huguenin* v. *Baseley*, 13 Ves. 105; S. C. 14 id. 273; S. C. 15 id. 180; *Wright* v. *Proud*, 13 id. 138; *Harris* v. *Tremenheere*, 15 id. 40; *Edwards* v. *Meyrick*, 2 Hare, 60; *Hunter* v. *Atkins*, 3 My. & K. 113.) And this is I think the extent to which the well considered cases go, and is the scope of ' constructive fraud.' "

The court at Special Term refused to enjoin the distribution of the fund upon the authority of *Platt* v. *Elias* (101 App. Div. 518). In that case Platt was in full possession of his faculties and the

payments extended over a period of eight years. The court said: " His examination would appear to disclose a man whose mental power was considerably impaired; but there is no evidence to show that when the payments were made he was not in full possession of his faculties and knew what he was doing, and voluntarily gave the appellant any sum of money that he gave her."

On the other hand, the facts in the case now before us if proved might indicate fraud and undue influence.

In *First National Bank of Coffeyville* v. *Wright* (207 App. Div. 521, 526) the court said: " Fraud vitiates all contracts, and it is the general rule that the burden of establishing the fraud rests upon the parties alleging it as a ground for defeating a contract. But there is an exception to this rule as generally recognized, which is stated in *Cowee* v. *Cornell* (75 N. Y. 91, 99)   *   *   *. Under such circumstances, if the burden is not met by the stronger party, constructive fraud may be found. We have not here one of the usual cases of confidence placed and influence exerted, in which it is presumed that the parties dealt under terms of inequality, but rather a case in which the inequality is shown by the facts and circumstances of the case, and to such a case the same exception applies. In *Smith* v. *Kay* (7 H. L. Cas. 750; cited 13 C. J. 407) it is said: ' The relations with which the Court of Equity most ordinarily deals, are those of trustee and *cestui que trust,* and such like. It applies especially to those cases, for this reason and this reason only, that from these relations, the court presumes confidence put and influence exerted. Whereas in all other cases where those relations do not subsist, the confidence and the influence must be proved extrinsically; but where they are proved extrinsically, the rules of reason and common sense, and the technical rules of a court of equity, are just as applicable in the one case as in the other.' Also the circumstances of a case may be of such a character ' if not sufficient to shift the presumption, at least to authorize a setting aside of a contract without any decisive proof of fraud but upon the slightest proof that advantage was taken of the relation, or of the use of " any arts or stratagems or any undue means or the least speck of imposition." ' (*Cowee* v. *Cornell,* *supra,* 101.) Where the circumstances justify it, the law will interpose ' by adjusting the quality and measure of proof to the circumstances, to protect the weaker party and, as far as may be, to make it certain that trust and confidence have not been perverted or abused.' "

If the facts alleged in the moving papers are established, the plaintiffs will undoubtedly be entitled to relief in this or some other appropriate action.

The order denying the injunction should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.