In the Matter of the Estate of ROSA GALLAGHER, Deceased.

Surrogate's Court, Westchester County, May 15, 1930.

*Holden & Cavanaugh* [*Stephen Holden* of counsel], for the executors.

*William H. Sommer*, for the respondent.

SLATER, S. This is a discovery proceeding brought by the executors to secure certain personal property now in the possession of Barbara Albrecht. Mrs. Albrecht denies she ever had possession of the $100 and claims she has title to and right to possession of the $2,000 by virtue of a contract.

This court has the authority to make a decree directing payment to the executors of the estate, if the court finds that the property belonged to the estate. (*Matter of Akin*, 248 N. Y. 202; *Matter of Wilson*, 252 id. 155.)

The decedent was an old lady of about eighty years, a member of an old Mount Vernon family, who went to the boarding house of one Barbara Albrecht in Mount Vernon on October 24, 1928, and remained until she died on January 6, 1929. She had been living with and was friendly with her relatives and the evidence shows

that in November she had been out with a friend of the family to arrange to become an inmate in a home for the aged about to be opened in the city of Mount Vernon.

She made her will on November 13, 1928, while living at this boarding house, in which she bequeathed her property to two nephews and a niece, namely, William E. Morrissey, James T. Morrissey and May Morrissey Purcell. Her next of kin were, in addition to these three, May Glover, William H. Gritman, Georgiana Stillwell, Eveline Brooks, Nettie Griffin and Frederick Gritman, being children of a deceased brother and of a deceased sister. The evidence is that members of her family called upon her at the Albrecht home. She was not in discord with her people. The family sent her presents at Christmas time in 1928.

The decedent had an account in the Eastchester Savings Bank of Mount Vernon, N. Y., on October 1, 1928, of $4,387.29. On October 25, 1928, $25 was withdrawn. On November 9, 1928, $50 was withdrawn. On December 26, 1928, $100 was withdrawn. This last withdrawal was in pursuance to an order offered in evidence upon the bank, signed by Rosa Gallagher, and indorsed by one Alexander N. Zoesch. The next withdrawal was of $2,000, dated January 3, 1929, pursuant to a draft upon said savings bank offered in evidence, signed by " Rosa Gallagher "— " her mark," witnessed and acknowledged. The bank, pursuant to said order, paid $50 in cash and a check for $1,950 drawn to the order of Barbara Albrecht. The decedent died January 6, 1929, leaving a balance in the bank of $2,259.67. This was the sum total of her estate at death.

The person who indorsed the $100 draft testified that he gave the money to the decedent, but neither said sum of money, nor any part thereof, was found after her death. She did not leave the house after receiving said $100, and, in my judgment, all the truth with regard to this $100 was not disclosed to the court. The claim by Barbara Albrecht is that the decedent paid her the $2,000 for her board and care from November 7, 1928 (she having paid $10 for the two weeks between October twenty-fourth and November seventh), and upon the further agreement by Barbara Albrecht that she would board and care for decedent as long as she lived. Mrs. Albrecht testified that decedent's illness was old age; that she was in bed for two weeks prior to her death, very weak and sick.

There were three witnesses to the $2,000 bank order, other than the payee. It has a certificate of acknowledgment on its reverse side.

Emma Thomopolis, a neighbor, was such a witness, and testified she saw Mrs. Albrecht taking care of Mrs. Gallagher and that she

was sick about a week and a half or two weeks before she died. She also testified that she heard Mrs. Gallagher say she wanted Mrs. Albrecht to have this money because Mrs. Albrecht was the only friend she had, the only person who was good to her and her people did not want to have anything to do with her. At the time Mrs. Gallagher was sick in bed. Under cross-examination, the memory of this witness was faulty.

Alexander N. Zoesch was another witness. He was the person who took the order and brought the $100 from the Eastchester Savings Bank on December twenty-sixth. He testified that he heard Mrs. Gallagher say she wanted Mrs. Albrecht to have $2,000; he saw Mrs. Gallagher off and on every day.

Another witness to the bank order was Barbara Albrecht, the payee of the draft. The fourth witness was Elbert C. Riedinger, a notary public. The latter testified that he was sent for by Mrs. Albrecht. He saw Rosa Gallagher make her mark; that she was propped up in bed. Up to that time he did not remember that Mrs. Gallagher had said one word. He testified that Mrs. Gallagher said she wanted Mrs. Albrecht to go to the bank and get the money. She wanted to give Mrs. Albrecht some money.

Dr. Frank M. Bryant, of Mount Vernon, was called and testified that he attended the decedent from December 19, 1928, to January 6, 1929, the date of her death, making three visits — on December 19, 1928, January 2, 1929, January 5, 1929. He said that on his first call he found her up and around and to be an old woman suffering from arthritis, chronic nephritis, arterio sclerosis, high blood pressure, talkative. On January 2, 1929, he found her in bed, in very bad condition. The doctor could not recall, nor relate, conversations upon which to base a conclusion, or for the court to base its conclusion as to whether decedent was rational or irrational. He testified that on January second he met Sergeant Morrissey coming to call upon the decedent. Sergeant Morrissey, a brother-in-law by marriage, testified he called and saw her on January 1 and January 2, 1929. He frequently saw her at the old homestead. He found her in bed unable to converse. Mrs. Albrecht stood in the door all the while. The decedent mumbled and had her eyes closed.

Alexander N. Zoesch, who only became acquainted with decedent after October, 1928, brought two blank bank orders at the time the decedent signed the $100 withdrawal order on December twenty-sixth. The other blank order was handy and ready for use. The $2,000 order is entirely in the handwriting of Barbara Albrecht, the payee. Barbara Albrecht wrote the name " Rosa Gallagher " and the words " her mark." Rosa Gallagher's signature to the

draft dated December twenty-sixth was a good, legible signature. Eight days later she made her mark.

Presumptions are very much weakened when the paper in controversy is shown to have been all in the handwriting of its beneficiary, and the transaction entirely directed by the beneficiary. The instant case is such as calls for the application of the doctrine of constructive fraud which throws upon the person claiming the property the burden of proving not only that the deceased fully understood the act, but that she was not induced to sign the paper by undue influence, and that the beneficiary did not take unfair advantage of her superior influence or knowledge. Fraud vitiates all contracts. Whenever the relation between the contracting parties appears to be of such a character as to render it certain that they did not deal on terms of equality, but that, either on the one side from superior knowledge, or from overmastering influence, or on the other from weakness, dependence, unfair advantage in a transaction is rendered probable, there the burden shifts, the transaction is presumed void and it is incumbent upon the stronger party to show affirmatively that no deception nor undue influence was used, and that all was fair, open, voluntary and well understood. (*Cowee* v. *Cornell*, 75 N. Y. 91, 99; *Matter of Smith*, 95 id. 516, 522; *Barnard* v. *Gantz*, 140 id. 249, 256; *Allen* v. *La Vaud*, 213 id. 322; *Matter of Booth*, 215 App. Div. 516, 521; *Adams* v. *Luce*, 181 id. 232; *First National Bank* v. *Wright*, 207 id. 521; affd., 240 N. Y. 559; *Kelly* v. *Kelly*, 116 Misc. 195; *Collins* v. *McKenna*, Id. 72; *Matter of Weber*, 118 id. 653; *Matter of Clift*, 135 id. 4, 10; *Bronx County Trust Co.* v. *O'Connor*, 220 App. Div. 340; *Matter of O'Connor*, 132 Misc. 294; revd., upon another point, 226 App. Div. 126.)

Transactions of the sort herein should always be closely scrutinized and never permitted to stand, unless it clearly appears that the maker of the paper was fairly conscious of his acts and of sufficient mentality not to be influenced by stronger minds.

Where circumstances justify it the law will adjust equality and measure all proof to the circumstances to protect the weaker party, and to make it sure that trust and confidence have not been abused.

The decedent was a dependent sick old lady who relied upon other people for maintenance, and she was without personal choice for advice. It was a deathbed transaction. It is obvious that $2,000 was too great a sum to pay for a few weeks past board, or for future board and care of an old lady who was expected soon to die.

The order upon the bank was entirely in the handwriting of its payee, upon the extra blank order brought by Zoesch. The name

" Rosa Gallagher " was signed by the payee, and she wrote the words " her mark " after the cross mark had been made by the decedent. Those circumstances render it subject to suspicion and raise a presumption of fraud, for, when an instrument is prepared by or by direction of the party who seeks advantage from it and the other party has no person with whom he consults on the subject, a great degree of jealousy attends the instrument. (Sears v. Shafer, 1 Barb. 408, 415; affd., 6 N. Y. 268.)

Rosa Gallagher, being aged and ill, and under the respondent's care, it is plain that they did not deal on terms of equality, and under these circumstances, where a stronger party has obtained a large part of decedent's property, the transaction may be presumed void.

A notary public gave evidence. He said the order upon the bank already had upon its back in typewritten form a certificate of acknowledgment which he duly signed. The transaction was deliberate and executed with the utmost care and form. The notary gave evidence in support of .his certificate. He was disinterested. Even with this evidence, the case comes fairly within the equitable rule which casts upon the party who was benefited by the transaction the burden of showing the integrity and fairness of the transaction, that it was fully understood; that there was no fraud, constructive or otherwise, mistake or undue influence. Equitable relief in this class of cases without proof of actual fraud is afforded under the doctrine of constructive fraud. · The respondent was in duty bound to act in the utmost good faith and the evidence fails to disclose that the respondent ever consulted any member of the decedent's family as to the advisability of making the transfer. Common fairness would have impelled the respondent to refrain from seeking the execution and delivery of the order for $2,000, an amount nearly equal to decedent's entire estate, until she had been given competent disinterested advice. There is no claim that the decedent was ever afforded the benefit of such advice. In fact, there is evidence in the record that the respondent repelled the relatives of the decedent.

I do not think the respondent has sustained the burden of proof with respect to the question whether there was past consideration for the transfer of the $2,000, i. e., from October 24, 1928, to January 3, 1929. This leads to a consideration of the question arising with respect to respondent's contention that the agreement was for her to support the decedent for her lifetime, and whether this is sufficient consideration for the transfer. The agreement for future support is not in writing. Nothing in writing was used by the respondent to safeguard the interest of the decedent, and she

gave no security for the faithful performance of her stated obligation to support the deceased. No reason whatever has been shown by the respondent why the decedent should be willing to convey nearly one-half of her property upon a mere oral promise of future support, and without any security that the promise would be kept. It is improbable that she would have consented to such an agreement if she had the mental power of transacting business or had the judgment of competent, independent advice. (*Kelly* v. *Kelly*, 116 Misc. 195, at pp. 236, 237, 238; *Rosevear* v. *Sullivan*, 47 App. Div. 421, 424.)

The transaction cannot be upheld. The evidence fails to satisfy me that the respondent has met the law's requirements. Even the presence of a notary is not enough to justify an inference that she comprehended the full legal effect of the paper she signed. The fact that she knew and understood what she was doing cannot be inferred because the instrument was read to her, unless it was fully explained by a competent adviser of her choice and the remote consequence pointed out.

The respondent is accountable for the proceeds of the draft and said sum of $2,000 is an asset of the decedent's estate.

Submit decision as herein directed with notice to attorneys appearing.