Matter of Petretti (2024 NY Slip Op 50716(U))

[*1]

Matter of Petretti

2024 NY Slip Op 50716(U)

Decided on June 12, 2024

Surrogate's Court, Queens County

Kelly, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 12, 2024
Surrogate's Court, Queens County

Matter of Lucy Petretti, Deceased.

File No. 2020-3302

Mario Biaggi, Jr., for petitioner, Richard Biaggi
Elman Freiberg PLLC for objectant, Robert Petretti Jr. 
Greenfield Stein & Senior LLP for objectant, Barbara O'Flynn

Peter J. Kelly, S.

Offered for probate in this proceeding is an attorney-drafted instrument dated January 19, 2018, purported by Richard M. Biaggi (petitioner) to be the last will and testament of the decedent.
Objections have been filed to the validity of the instrument by decedent's niece, Barbara O'Flynn, and nephew, Robert Petretti, Jr. (objectants). The objections allege that the offered instrument is invalid on the grounds that it was not duly executed; the decedent lacked testamentary capacity; the instrument was procured by fraud (actual and constructive); duress; and undue influence.
The petitioner now moves for summary judgment, dismissing the objections, admitting the will to probate, and appointing petitioner as the executor of the estate. Both objectants have opposed the motion. Upon review of the papers and exhibits filed in support of the motion, as well as the papers and exhibits filed in opposition, the reply thereto, and after oral argument on the record, the court finds as follows: 
The decedent, Lucy Petretti, died on July 15, 2020, at the age of 90 leaving the objectants as her distributees. The challenged instrument, an attorney-drafted and supervised will, provides for several small pre-residuary bequests while distributing the balance of the estate to the petitioner and his brother, Mario Biaggi, Jr. Both of the residuary beneficiaries are attorneys and neither are related to the decedent. The decedent's estate, which includes income producing real property, is conservatively valued at approximately $5,000,000.00.
As revealed by the exhibits, the decedent had executed a prior instrument on May 10, 2004 (2004 Will) that was apparently a mirror image of her brother Raymond's will. That instrument includes several modest pre-residuary bequests before distributing the balance of the estate to her brother, Raymond. The Biaggis are the contingent residuary beneficiaries in that Will.[FN1]
Raymond predeceased the decedent in 2007 and his will was admitted to probate without [*2]contest.
The petitioner contends that dismissal of the objections is warranted inasmuch as the offered instrument represents the decedent's long-standing desire to bestow her largess on the Biaggis with whom she enjoyed a close, familial-like relationship for over 50 years.
In opposition, the objectants initially argue that the motion is not supported by admissible evidence. Additionally, objectants denounce the will as the product of the Biaggis' undue influence and overreach practiced upon an elderly decedent whose mental acuity had long been in a state of decline. 
As a threshold matter, the court first turns to the branch of objectants' opposition that contends that the motion is only supported by evidence that violates CPLR 4519 or constitutes hearsay. 
Briefly, CPLR 4519, known colloquially as the "Dead Man's Statute," provides that a person interested in the event shall not be examined as a witness in his own behalf against the executor, administrator, or survivor of the decedent concerning a personal transaction or communication with the decedent. 
Evidence excludable pursuant to CPLR 4519 may only be used to defeat a motion for summary judgment, not in support thereof [FN2]
(see Phillips v. Kantor & Co., 31 N Y2d 307 [1972]; Matter of Alden, 52 AD2d 1051 [4th Dept 1976]). The rationale being that "[it] is always possible that the incompetency will be waived at the trial, or the door opened, by design, or by inadvertence" (id.). 
For instance, when a fiduciary questions an adversary as to all or part of a personal transaction with the decedent, they open the door, at least with respect to that transaction, such that otherwise incompetent testimony is admissible to fully explain the personal transaction in issue (see, e.g., Matter of Radus, 140 AD2d 348 [2d Dept 1988]). The purpose of this rule is to place the parties in relatively equivalent positions vis-a-vis the same transaction, thereby preventing the unfair use of the statute as a sword rather than a shield as intended (see id., citing Matter of Wood, 52 NY2d 139, 145).
In this regard, objectants contend that the movant is unable to rely on the affidavits or deposition testimony of the Biaggis, or of any other legatees named in the offered instrument in support of their summary judgment motion. Indeed objectants go so far as to claim that petitioner may not even rely on the objectants' testimony in furtherance of the motion.
Since evidence violative of CPLR 4519 can be used to defeat summary judgment, the objectants paradoxically submit deposition testimony of some of the individuals whose lips they wish to seal, most notably, the Biaggis. As such, they appear to be asking the Court to extract from the testimony only that which is favorable to objectants' position, whilst disregarding it for any other purposes.
Based on the record submitted, the Court does not have to engage in the impractical and labor intensive exercise of parsing out and considering only those portions of the disputed testimony that inures to the benefit of the objectants. Nor does the Court have to opine on whether such an approach seemingly runs afoul of the equalizing objectives of the Dead Man's Statute. That, fortuitously, is due to the fact that the Court did not need to consider the disputed evidence in determining the within motion (see Matter of Baron, 2020 NY Misc Lexis 3413 [Sur Ct, Queens County 2020]).
That being said, in order to prevail, petitioner as the movant must establish prima facie entitlement to judgment as a matter of law in the first instance (see generally Zuckerman v NY, 49 NY2d 557, 562 [1980]; see also e.g. Matter of Mooney, 74 AD3d 1073 [2d Dept 2010]; Matter of DiChiaro, 39 AD3d 751 [2d Dept 2007]). 
More specifically, the petitioner has the burden of demonstrating that the instrument offered for probate was duly executed in accordance with EPTL § 3-2.1 and that the decedent possessed testamentary capacity at the time the instrument was executed (see e.g. Mooney, 74 AD3d at 1075; DiChiaro, 39 AD3d at 751).
Generally, once the requisite proof has been proffered by the movant, the objectants must assemble and lay bare affirmative proof that their claims are real and capable of being established at trial (see Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27 [1st Dept 1979] aff'd 49 NY2d 924 [1980]). The objectants are to be afforded every favorable inference that may be drawn from the evidentiary facts alleged (see e.g. Matter of Wimpfheimer, 8 Misc 3d 538 [Sur Ct, Bronx County 2005]), and the court is constrained to deny the motion if there is any doubt as to the existence of a triable issue (see e.g. Baker v Briarcliff School Dist., 205 AD2d 652, 653 [2d Dept 1994]).
With respect to the branch of the motion for summary judgment dismissing the objections based upon lack of testamentary capacity, the petitioner bears the burden of proving, by a preponderance of the evidence, that at the time of the execution decedent knew the following: (i) the nature and consequences of executing a will, (ii) the nature and extent of the property she was disposing of, and (iii) those who would be considered the natural objects of her bounty and her relations with them (Matter of Kumstar, 66 NY2d 691, 692 [1985]; Matter of Falkowsky, 197 AD3d 1300 [2d Dept 2021]; Estate of Fish, 134 AD2d 44 [3d Dept 1987]).
In support of the motion, the petitioner has submitted, inter alia, a copy of the subject instrument with a contemporaneously executed attestation clause and self-proving affidavit; transcripts of the SCPA 1404 examinations of the supervising attorney/draftsperson and two attesting witnesses; the examination of decedent's neurologist, Dr. Anthony Cohen; and a bevy of affidavits from various individuals, ranging from petitioner's secretary to a carpet salesman to convince the Court that decedent's testamentary capacity is factually indisputable.
In addition, the instrument in question, which is attorney drafted and executed under counsel's supervision, contains a contemporaneous self-proving affidavit and an attestation clause. Submission of the attestation clause and the contemporaneous self-proving affidavit—which expressly states that the testator was of "sound and disposing mind and memory and competent in every respect"—satisfies this initial burden (see Matter of Rottkamp, 95 AD3d 1338, 1339 [2d Dept 2012]).
In opposition, objectants argue that the testimony elicited at the 1404 examinations and [*3]the decedent's medical records raise conflicting inferences concerning the decedent's capacity and render the assertions of testamentary capacity set forth above suspect, such that the issue, at the very least, warrants consideration by a jury.
More specifically, notwithstanding general claims that decedent appeared cogent, rational, or "knew what she wanted" at the time of the instrument's execution, the attorney draftsperson, petitioner's friend of 50 years, admitted at his 1404 examination that he had no discussion with the testator about either the nature and extent of the property she was disposing of nor did he ascertain those who would be considered the natural objects of her bounty and her relations with them.
Indeed he admittedly had minimal estate planning experience and testified that he stopped inquiring about decedent's family members once he ascertained that she had never been married and had no children. The decedent's ownership of assets, including income producing commercial real property worth several million dollars, remarkably did not enter the conversation.
As revealed at the 1404 examinations, attesting witness Corsa, herself an attorney, was also appallingly dismissive of these considerations. Corsa testified that as a drafting attorney, she neither inquires about the value of the testator's estate nor the decedent's next of kin, and saw no need to do so as an attesting witness.
In addition to the foregoing, objectants submit copies of decedent's medical records that pre-date and immediately post-date the instrument's execution. Among them are those documenting decedent's visit to her neurologist on May 16, 2017, less than a year prior to the date of execution. The medical records describe the decedent as confused, nervous, and suffering from memory lapses. Among other things, Dr. Cohen reported the following:
"Lucy talks of her family dying recently and leaving her alone. Apparently her youngest brother who died most recently was eight years ago. She talks of her mother dying recently and that was many years ago. Clearly there is some confusion . . ."
The testator's confusion as to the status of her next-of-kin appears throughout the record both prior to and subsequent to the instrument's execution. Among the evidence produced in this regard is a recording of a voice message of the decedent reliving the passing of her long-deceased brother and informing the objectant, Barbara, of the "sad news that Uncle Junie passed away."
In an October 9, 2017 report, three months prior to the execution ceremony, Dr. Cohen noted that the decedent's "main problem is a progressive dementia. She is following the usual pattern of developing paranoia and is not taking her medications." One month after the execution of the offered instrument, decedent was unable to name the president, and could not provide the name of her health care proxy to the doctor.
Also submitted was the deposition testimony of the decedent's full-time nurse's aid, Solange Jean-Louise, who testified that decedent's condition had dramatically declined between May and September of 2017:
Because she's talking a lot of funny things. She curse. She believe that somebody took her money, and she talking about people die a long time ago, you know, they're coming. That this time she was talking a lot of nonsense things.
According to Ms. Jean-Louise, "she's [the testator] not aware of nothing between '17 and '18. She was terrible which is why I took the second time to Dr. Cohen [the neurologist]." [*4]Despite enduring intense cross-examination by petitioner's counsel, Ms. Jean-Louise continued to maintain that decedent's mental condition had significantly deteriorated at or about the time of the instrument's execution.
Under the facts set forth herein, the Court finds that the medical records in the months prior to and just after the execution of the proffered instrument coupled with the deposition testimony of the decedent's long-time aide are sufficient to raise an issue of fact with respect to decedent's testamentary capacity, especially given the absence of any significant inquiry by the drafting attorney or witnesses regarding this issue (see Matter of Gobes, 189 AD3d 1402, 1404 [2d Dept 2020]; Matter of George, 2014 NYLJ Lexis 1747 [Sur Ct, Kings County 2014]).
Accordingly, the branch of the motion seeking to dismiss the objections based on testamentary capacity is denied.
Turning to the branch of the motion to dismiss the objections based upon due execution, submission of the offered instrument which includes an attestation clause and a contemporaneous self-proving affidavit affords the instrument a presumption of compliance with the statutory formalities of EPTL 3-2.1 (see Matter of Sabatelli, 161 AD3d 872 [2d Dept 2018]; Matter of Mele, 113 AD3d 858 [2d Dept 2014]). Further, where an attorney supervises the instrument's execution, the instrument is generally afforded a presumption of regularity and compliance (see Matter of Templeton, 116 AD3d 781 [2d Dept 2014]; Matter of Tuccio, 38 AD3d 791, 792 [2d Dept 2007]).
On the other hand, the draftsperson and attesting witnesses' relationship [FN3]
to the beneficiaries, and the vast inconsistencies in their 1404 testimony regarding the specifics of the execution ceremony raise additional questions of credibility that must be reserved for trial (see e.g., Estate of Penick, 2018 NYLJ Lexis 3947 [Sur Ct, New York County 2018]; Matter of Panebianco, 2015 NY Misc Lexis 4693 [Sur Ct, Westchester County 2015]); Will of Kazan, 2013 NYLJ Lexis 5931 [Sur Ct, New York County 2013]; Ten Eyk v Whitbeck, 156 NY 341 [1898]).
Despite petitioner establishing prima facie compliance with the statutory formalities, where, as here, issues of fact exist with respect to testamentary capacity, which are accompanied by the attesting witnesses' contradictory testimony regarding the execution ceremony, summary judgment as to due execution is premature (see Kazan, supra at *11; Matter of George, supra at *7, supra; Matter of Martinez, 2007 NY Misc Lexis 6891 [Sur Ct, New York County 2007]). 
Accordingly, the branch of the motion seeking to dismiss the objections based upon due execution is denied.
The Court now turns to the branch of the motion seeking dismissal of the factually-driven issue of undue influence. On a motion for summary judgment dismissing an objection based upon undue influence, the movant bears the prima facie burden of demonstrating that the will was not the product of undue influence (see Matter of Rozof, 219 AD3d 1428 [2d Dept 2023]). 
Generally, submission of the self-proving affidavit setting forth that the instrument was not the product of undue influence accomplishes this, and the burden lies with the party asserting undue influence (see Matter of Walther, 6 NY2d 49, 54 [1959]; see also Matter of DelGatto, 98 [*5]AD3d 975, 977-78 [2d Dept 2012]). However, where a confidential relationship exists, a prima facie showing requires more
An inference of undue influence, requiring the beneficiary to explain the circumstances of the bequest arises when a beneficiary under a will was in a confidential or fiduciary relationship with the testator and was involved in the drafting of the will . . . Although the inference does not shift the burden of proof on the issue of undue influence, it places the burden on the beneficiary to explain the circumstances of the bequest. The adequacy of the explanation presents a question of fact for the jury.
(Matter of Neenan, 35 AD3d 475 [2d Dept 2006] (emphasis added); see also Matter of DelGatto, 98 AD3d 975, 978 [2d Dept 2012]; Matter of Bach, 133 AD2d 455, 457 [2d Dept 1987]; Matter of Collins, 124 AD2d 48 [4th Dept 1987]; Matter of Burke, 82 AD2d 260 [2d Dept 1981]; Matter of Putnam, 257 NY 140 [1931]).
The Biaggis do not dispute that they occupied a confidential relationship with the decedent as a matter of law. The nature of the relationship is acknowledged in paragraph eighth of the petitioner's verified probate petition and again in petitioner's fourth affirmation amending said petition (see Gordon v Bialystoker Ctr. & Bikur Cholim, Inc., 45 NY2d 692, 698 [1978]; Matter of Estabrook, 2013 NYLJ LEXIS 7352, **14-16 [Sur Ct, Suffolk County 2013]; Matter of Bender, 2010 NYLJ LEXIS 753, **18-19 [Sur Ct, Kings County 2010]).
Separate and apart from this, the record indicates that the relationship between the decedent and the Biaggis appears to be confidential as a matter of fact as well. When distilled to its essence, the overriding consideration in this analysis is the degree of dependency, and concomitant disparity of power, that exists between the testator and the confidant (see e.g. Ten Eyck v Whitbeck, 156 NY 341, 353 [1898]; Bender, 2010 NYLJ LEXIS at **19-21). That dependency is contingent on a variety of factors, including but not limited to the extent of the beneficiaries' involvement in the decedent's affairs, be they personal, business, or financial in nature, and the testator's mental and physical state.
Petitioner insists that irrespective of the confidential relationship, an inference of undue influence cannot arise because petitioner was, purportedly, not involved in the drafting of the will. Contrary to petitioner's assertions, the factual record indicates otherwise.
It is not disputed that the draftsperson referred to the testator was petitioner's friend of many years (see Estate of Martinez, 2007 NY Misc Lexis 6891 [Sur Ct, New York County 2007]). The record reflects that the Biaggis "as agents" participated in "multiple" telephone conversations with the draftsperson concerning the testator; emailed drafting instructions to the attorney-draftsperson; arranged and participated in a meeting with the testator and the attorney drafter at her home; and received the original instrument directly from the drafter after its execution.
Notably, despite the volumes of documents submitted by petitioner, evidence reflecting the testator's active and independent participation in the instrument's creation remain sparse (see e.g. Matter of Gerdjikian, 8 AD3d 277 [2d Dept 2004]; Matter of Leeds, 2015 NY Misc LEXIS 2582, *11 [Sur Ct, Nassau County 2015]).
Notes reflecting communications between the draftsperson and the decedent do not exist based upon attorney Bruno's self-described practice to "destroy his notes regarding client conversations." In this court's experience, such a practice is an exceptional deviation from that of [*6]most estate practitioners. Usually, a client's intent is carefully memorialized, particularly when a testator presents themselves under facts and circumstances existing herein.
The above suggests an absence of both independent and competent legal representation completely dissimilar from the facts presented in Matter of Chouake, 2023 NY Misc Lexis 1590 [Sur Ct, Queens County 2023] and petitioner's reliance upon this case is entirely misplaced.[FN4]

Given the confidential relationship between the attorney-beneficiaries and the decedent; the petitioner's referral of a long-time friend to serve as draftsperson; and their participation in the instrument's creation and preservation, the court finds they should be required to provide an explanation of this bequest.
Moreover, the law is clear that the adequacy of the explanation for this substantial bequest and the credibility of the various witnesses merit the careful scrutiny of the trier of fact, rendering this issue unsuited to summary determination (see Matter of Lamerdin's Will, 250 AD 133 [2d Dept 1937]).
Such treatment is especially appropriate in this matter because even in the absence of a confidential relationship, the objectants have set forth sufficient circumstantial evidence of undue influence demonstrating the existence of triable issues of fact (see Matter of Walther, 6 NY2d 49, 56 [1959]; Matter of Zirinsky, 43 AD3d 946, 948 [2d Dept 2007]).
Such circumstantial evidence includes, inter alia, the diminished mental condition of the testator; the testator's reliance on others for her physical care; the fact that the attorney-draftsperson was a long-time friend of the petitioner; and the opportunity of the attorney-beneficiaries to wield undue influence (see generally e.g. Children's Aid Soc. v Loveridge, 70 NY 387 [1877]; Matter of Anna, 248 NY 421, 424 [1928], quoting Rollwagen v Rollwagen, 63 NY 504, 519 [1876]; Matter of Katz, 63 AD3d 836 [2d Dept 2009]; Matter of Elmore, 42 AD2d 240 [3d Dept 1973]; Matter of Kruszelnicki, 23 AD2d 622 [4th Dept 1965]; see also Matter of Burke, 82 AD2d 260, 270-72 [2d Dept 1981]; Matter of Hirschorn, 21 Misc 3d 1113 [A] [Sur Ct, Westchester County 2008]; Matter of Zirinsky, 10 Misc 3d 1052[A] [Sur Ct, Nassau County 2005]).
Accordingly, the branch of the motion to dismiss the objections to the validity of the instrument based on undue influence is denied, as the petitioner has failed to demonstrate prima facie entitlement to relief and issues of fact are clearly present.
With respect to the objections alleging actual fraud or constructive fraud, to prevail on a claim of actual fraud, the objectants are required to demonstrate by clear and convincing evidence that knowingly false statements were made to the decedent that induced her to execute an instrument she would not have otherwise made (see In re Gross, 242 AD2d 333 [2d Dept 1996]).
The moving papers in opposition are bereft of any argument or evidence in support of this claim. Accordingly, the branch of the motion for summary judgment dismissing the objection to [*7]the validity of the offered instrument on the grounds of actual fraud is granted.
While actual fraud requires knowledge on the part of the perpetrator of his false representation, constructive fraud emanates from the existence of a fiduciary or confidential relationship whereby the trusting party reposes such confidence in the guilty party they do not exercise the care and vigilance that ordinarily would be exercised in a given situation" (see Matter of Klenk, 151 Misc 2d 863 [Sur Ct Suffolk Co 1991]).
The doctrine of constructive fraud places upon the individuals claiming the property the burden of proving not only that the deceased fully understood the act, but that she was not induced to sign the paper by undue influence, and that the beneficiaries did not take unfair advantage of their superior influence or knowledge (Estate of Gallagher, 137 Misc 564 [Sur Ct, Westchester County 1930]).
As the issue of constructive fraud is comprised of the same allegations and concerns the same factual considerations as those that pertain to undue influence, the Court finds that this objection is encompassed in the objection based upon undue influence. It is therefore dismissed as duplicative.
The parties and their counsel are directed to appear for a pre-trial conference on July 18, 2024 at 11:00 a.m.
This is the decision and order of the Court.
Dated: June 12, 2024
HON. PETER J. KELLY
ACTING SURROGATE

Footnotes

Footnote 1:Although the deposition testimony submitted indicates that the original 2004 Will is still in existence, as well as a testamentary instrument from 2003, neither have been filed with this Court. 

Footnote 2:Hence, the version of the facts set forth in the affidavit of petitioner's counsel, Mario Biaggi, Jr., who is also a beneficiary, was not considered (see Estate of Penick, 2018 NYLJ Lexis [Sur Ct, New York County 2018]).

Footnote 3:Attesting witness Lorraine Corsa, has been a colleague of the Biaggis for over 20 years. Attesting witness Cirino Borgia, nephew of the draftperson, is also acquainted with the Biaggis.

Footnote 4:In contrast to the facts presented here, the testator in Chouake rejected the attorney referred to her by the attorney-beneficiary; independently selected an attorney unknown to the beneficiary; actively negotiated the rate she was willing to pay for her estate plan; and proceeded to immerse the drafting attorney with volumes of written communications detailing her wishes and her specific intention to disinherit her brother and sole distributee.